**Mary Burke SPROGIS, Plaintiff-Appellee,**

**v.**

**UNITED AIR LINES, INC., Defendant-Appellant.**

**No. 18481.**

United States Court of Appeals,
Seventh Circuit.

June 16, 1971.

Rehearing En Banc Denied
July 16, 1971.

Stevens, Circuit Judge, dissented and filed opinion.

Stuart Bernstein, Arthur J. Kowitt, Chicago, Ill., for defendant-appellant; Mayer, Brown & Platt, Chicago, Ill., of counsel.

Richard F. Watt, Irving M. King, Chicago, Ill., for plaintiff-appellee; Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., of counsel.

Russell Specter, Deputy Gen. Counsel, David W. Zugschwerdt, Atty., Stanley P. Hebert, Gen. Counsel, Julia P. Cooper, Gen. Atty., E.E.O.C., Washington, D. C., amicus curiae.

Before CUMMINGS, KERNER, and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal raises the question whether United Air Lines, Inc. ("United") violated Section 703(a) (1) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2(a) (1)) by discriminating against plaintiff because of her sex.[1]

Prior to June 19, 1966, plaintiff was employed by United as a flight cabin attendant or stewardess. On that date, she was discharged for violating a company policy in effect at that time which required that stewardesses must be unmarried.[2] United employed and continues to employ both male and female employees, including male flight cabin attendants or stewards on overseas flights. No policy or rule restricting employment to single males has ever been enforced. Nor have female employees other than stewardesses been subjected to any similar requirement.

In August 1966, plaintiff filed a charge with the Equal Employment Opportunity Commission alleging that her discharge constituted unlawful discrimination because of sex in violation of Section 703(a) (1) of the Civil Rights Act of 1964. Processing of this and similar charges against airlines was suspended by the Commission pending completion

---

1. Section 703(a) (1) provides in part:
 "It shall be an unlawful employment practice for an employer—
 "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; * * *."
 42 U.S.C. § 2000e–2(a) (1).

2. The no-marriage rule, requiring that female flight cabin attendants be single when first employed and remain unmarried under penalty of discharge, was first applied by United in the mid-1930's. By letter of agreement effective November 7, 1968, United agreed with the Stewardesses and Flight Stewards of United, as represented by the Air Lines Pilot Association, International, that
 "marriage will not disqualify a Stewardess from continuing in the employ of the Company as a Stewardess, but any Stewardess who shall hereafter become pregnant shall have her services with the Company permanently severed as a Stewardess * * *."
 The agreement does not abandon the single status requirement with respect to hiring. This Court expresses no opinion on the legality of that portion of the agreement which permanently severs any pregnant stewardess from United's employment.

of hearings on the request of several airlines, including United, for a written opinion that female sex was a bona fide occupational qualification within the meaning of Section 703(e) (1) of Title VII of the Act. 42 U.S.C. § 2000e–2 (e).[3] After extended hearings, the Commission ruled on February 23, 1968, that female sex was not a bona fide qualification for the position of flight cabin attendant and reserved resolution of questions concerning the "no-marriage" rule for "individual Commission decisions in pending charges." In August 1968, the Commission concluded that there was reasonable cause to believe that United had violated Section 703(a) (1) by discharging plaintiff. Two months thereafter, the Commission notified plaintiff of her right to sue her former employer in the district court, and this action was commenced a month later.

On cross-motions for summary judgment, the district court, 308 F.Supp. 959, found that plaintiff was discharged about June 19, 1966, because of her marriage. Although United then employed only unmarried stewardesses, it permitted its male stewards to be married. The court held that United's discharge of plaintiff was an unlawful employment practice and granted her motion for summary judgment. The court concluded that she was entitled to reinstatement, including the restoration of her seniority and longevity rights. Jurisdiction was retained in order to determine her loss of earnings and whether the same relief should be accorded to similarly discharged United stewardesses.

Simultaneously, the court entered a decree enjoining United from discriminat-

ing against plaintiff because of her sex and ordering United to restore her to employment and to pay her compensation "for all pay lost from the time of her illegal discharge on June 19, 1966, to the date of her reinstatement." David J. Shipman of the Chicago Bar was appointed master in chancery to make a recommendation for a money decree. Plaintiff was ordered to submit suggestions with respect to "the issue of whether the scope of the relief herein ordered should be made applicable to other stewardesses discharged by defendant." Further proceedings below were stayed while an interlocutory appeal was perfected pursuant to Section 1292(b) of the Judicial Code. 28 U.S.C. § 1292(b). We affirm.

### United's No-Marriage Rule for Stewardesses Discriminates on the Basis of Sex

United first disputes the finding of the district court that the no-marriage rule for stewardesses involves discrimination because of sex. Relying upon Cooper v. Delta Air Lines, 274 F.Supp. 781 (D.C.La.1967), United urges that the qualification merely distinguishes between classes of employees within the job category of stewardess in the same manner as educational or physical requirements.

In 1965 the Equal Employment Opportunity Commission considered the applicability of Section 703(a) (1) to discrimination against married women and determined that

" * * * an employer's rule which forbids or restricts the employment of married women and which is not ap-

---

3. Section 703(e) (1) provides in part:
"(e) Notwithstanding any other provision of this title, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor-management committee control-

ling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, * * *." 42 U.S.C. § 2000e–2(e).

plicable to married men is a discrimination based on sex prohibited by Title VII of the Civil Rights Act. It does not seem to us relevant that the rule is not directed against all females, but only against married females, for so long as sex is a factor in the application of the rule, such application involves a discrimination based on sex." 29 CFR § 1604.3(a).

This interpretation of the Act is "entitled to great deference." Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158. We adopt it as both reasonable and consistent with the legislative policies and history of Title VII.

■ The scope of Section 703(a) (1) is not confined to explicit discriminations based "solely" on sex.[4] In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. Section 703(a) (1) subjects to scrutiny and eliminates such irrational impediments to job opportunities and enjoyment which have plagued women in the past. The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class. Discrimination is not to be tolerated under the guise of physical properties possessed by one sex (cf. Cheatwood v. South Central Bell Telephone and Telegraph Co., 303 F.Supp. 754, 759–760 (M.D.Ala.1969)) or through the unequal application of a seemingly neutral company policy. Cf. Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613.

■ Viewing the class of United's married employees, it is clear that Unit-

ed has contravened Section 703(a) (1) by applying one standard for men and one for women. Cf. Phillips v. Martin Marietta Corp., *supra*. Concededly, the marital status rule applicable to stewardesses has been applied to no male employee, whatever his position. More pointedly, no male flight personnel, including male flight cabin attendants or stewards, have been subject to that condition of hiring or continued employment.

■ It is irrelevant to this determination of discrimination that the no-marriage rule has been applied only to female employees falling into the single, narrowly drawn "occupational category" of stewardess. Disparity of treatment violative of Section 703(a) (1) may exist whether it is universal throughout the company or confined to a particular position. Nor is the fact of discrimination negated by United's claim that the female employees occupy a unique position so that there is no distinction between members of opposite sexes within the job category. Considerations of the peculiar characteristics of the position only pertain to the claim of a bona fide occupational qualification under Section 703(e) (1). See 29 CFR § 1604.3(b);[5] cf. Phillips v. Martin Marietta Corp., *supra*.

*The Marital Status Rule Is Not Justified as a Bona Fide Occupational Qualification*

United's second contention is that under Section 703(e) (1) (note 3 *supra*) the no-marriage rule reflects a bona fide occupational qualification for the position held by stewardesses. Its argument rests upon the acceptance of three propositions: first, the duties currently performed by stewardesses are uniquely dif-

---

4. Congress specifically rejected an amendment to the Act which would have so limited the force of the prohibition against sex discrimination. Such a limitation, it was felt, would emasculate the Act. See 110 Cong.Rec. 2728, 13,825.

5. 29 CFR § 1604.3(b) provides:
 "It may be that under certain circumstances, such a rule [against married

females] could be justified within the meaning of Section 703(e) (1) of Title VII. We express no opinion on this question at this time except to point out that sex as a bona fide occupational qualification must be justified in terms of the peculiar requirements of the particular job and not on the basis of a general principle such as the desirability of spreading work."

ferent from those assigned to other flight personnel; second, sex constitutes a valid criterion for filling the position of stewardess; and third, the no-marriage rule may therefore be interposed as an additional requirement for such employment.

■ We find it unnecessary to consider the validity of United's claim that sex constitutes a bona fide occupational requirement for the job of airline stewardess. Even assuming that Section 703 (e) (1) might justify hiring only females for that position, that conclusion would not automatically legitimate the no-marriage rule imposed exclusively upon stewardesses. A valid discrimination in favor of women generally in filling that occupational position need not warrant the imposition of an additional qualification which operates discriminatorily against those employees by comparison to United's male employees. United's no-marriage rule must stand upon its own feet. If, and only if, that requirement reflects an inherent quality reasonably necessary to satisfactory performance of the duties of stewardesses can the no-marriage rule be supported. See 29 CFR § 1604.3(b) (note 5 *supra*).

■ United has failed to offer any salient rationale in support of its marital status policy. The only reason specifically addressed to that rule is that United was led to impose the requirement after it received complaints from husbands about their wives' working schedules and the irregularity of their working hours. This is clearly insufficient. Section 703(e) (1) specifically requires a correlation between the condition of employment and satisfactory performance of the employees' occupational duties. The complaints of spouses do not

suffice as an indicator of employee competence. Moreover, by its very terms, the narrow exception in Section 703(e) (1) calls for employers to treat their employees as individuals. United's blanket prophylactic rule prohibiting marriage unjustifiably punishes a large class of prospective, otherwise qualified and competent employees where an individualized response could adequately dispose of any real employment conflicts.

■ Similarly, the arguments advanced by United in support of its policy of hiring only females for this position fall short of establishing a basis under Section 703(e) (1) for its no-marriage rule. The marital status of a stewardess cannot be said to affect the individual woman's ability to create the proper psychological climate of comfort, safety, and security for passengers. Nor does any passenger preference for single stewardesses provide a valid reason for invoking the rule. See 29 CFR § 1604.1 (a) (iii); [6] Diaz v. Pan American World Airways, Inc., 442 F.2d 385, 387 (5th Cir. 1971).

■ United has presented no direct, rational, or reasonably limited connection between marital status, job performance, and its no-marriage rule for stewardesses. United has failed to explain why marriage should affect female flight cabin attendants' ability to meet the requirements of that position while at the same time leaving unimpaired the capabilities of male flight personnel, particularly stewards. Nothing in the job descriptions given by United offers a basis for that disparate treatment. Nothing in the institution of marriage necessarily compels the distinction. Accordingly, we hold that the district court properly granted summary judgment in favor of the plaintiff on this issue.

6. 29 CFR § 1604.1(a) (iii) provides:
 "The Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception: * * *
 "(iii) The refusal to hire an individual because of the preferences of co-workers,

the employer, clients or customers except as covered specifically in subparagraph (2) of this paragraph [permitting sex to be a bona fide occupational qualification for the purpose of authenticity or genuineness, as in the case of an actor or actress]."

*United's Defense of Good Faith Reliance Upon the Written Interpretation and Opinion of the Equal Employment Opportunity Commission Is Inapplicable*

■ United also asserts that its rule should not give rise to liability under Title VII of the Civil Rights Act since it "was in good faith, in conformity with, and in reliance on [a] written interpretation or opinion" of the Equal Employment Opportunity Commission within the meaning of Section 713(b)(1) of the Act.[7]

On July 1, 1965, the Commission published a regulation defining the phrase "written interpretation or opinion of the Commission" in Section 713(b) as having reference to

"[o]nly (a) a letter entitled 'opinion letter' and signed by the General Counsel on behalf of the Commission or (b) matter published and so designated in the Federal Register may be considered a 'written interpretation or opinion of the Commission' within the meaning of section 713 of Title VII." 30 Fed.Reg. 8407; 29 CFR § 1601.30.

This agency interpretation of the operative statutory language reasonably confines reliance justified under Section 713(b) to considered official expressions of opinion taking two specifically defined forms. As Judge Wisdom observed in Local 189, United Papermakers v. United States, 416 F.2d 980, 997 (5th Cir. 1969), certiorari denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 108, "[a] broader reading might bind the Commission to informal or unapproved opinions volunteered by members of its staff."

United does not contend that it relied upon anything published in the Federal Register by the Commission. Instead United relies upon a so-called "letter of opinion" of the Commission's General Counsel as to the applicability to the airline industry of the Commission's ruling on discrimination against married women.[8] Nothing in United's affidavit however, supports the claim that this document was in fact an "opinion letter" issued on proper request pursuant to applicable agency procedures. See 29 CFR §§ 1601.29, 1601.30. Significantly, the document referred to in United's affidavit lacked the letterhead of the Commission and did not reveal the addressee. There is no indication that the General Counsel's letter was "entitled 'opinion letter'" or signed by the General Counsel on behalf of the Commission as required by the interpretive regulation. Moreover, the representations of the Commission itself, before this Court as *amicus curiae*, disclose that the purported "letter of opinion" was instead a September 22, 1965, internal agency memorandum from the General Counsel to the Director of Compliance with respect to the latter's handling of inquiries he received.

Apart from the formal insufficiencies apparent from United's affidavit, the content of the September 22, 1965, Commission memorandum itself also fails to support a claim of good faith reliance upon an official opinion letter. The memorandum merely states that definitive judgment on the legality of no-marriage rules must be suspended pending further determination by the Commission of possible Section 703(e)(1) exemptions. The only "opinion" expressed was

---

7. Section 713(b)(1) provides in part:
 "In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission." 42 U.S.C. § 2000e–12(b).

8. No sworn or certified copy of this document was attached to United's affidavit supporting its cross-motion for summary judgment, as required by Rule 56(e) of the Federal Rules of Civil Procedure. But since no objection was pressed below, we deem it waived. Noblett v. General Electric Credit Corp., 400 F.2d 442, 445 (10th Cir. 1968), certiorari denied, 393 U.S. 935, 89 S.Ct. 295, 21 L.Ed.2d 271; see generally 6 Moore's Federal Practice ¶ 56.22[1], pp. 2814–2817 (1966).

that the circumstances existing at that time prevented an unequivocal ruling that the guideline on discrimination against married women invalidated airlines' no-marriage rules for stewardesses. The memorandum does not indicate a considered legal judgment approving the policy under the Act. Accordingly, we must conclude that the memorandum was not intended as the basis for employer reliance now claimed by United.

### Intentional Violation Unnecessary

 United seeks to escape responsibility on the ground that it was not intentionally violating Title VII. Such an argument has been rejected by the Fifth and Tenth Circuits, which have construed "intentionally" in Section 706 (g) as meaning the employment practice must be deliberate rather than accidental.[9] Local No. 189, United Papermakers v. United States, 416 F.2d 980, 996 (5th Cir. 1969), certiorari denied 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 108; Jones v. Lee May Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970). We agree with that construction of the Act. Cf. Griggs v. Duke Power Company, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158. The district court's conclusion that defendant's policy was "deliberate" was justified by the record and satisfies Section 706(g).

### The District Court Had Jurisdiction to Provide Relief to Individuals Similarly Situated

 As part of its decree, the district court retained jurisdiction to consider the possibility of extending relief to other stewardesses similarly discharged by United's enforcement of its no-marriage rule. Accordingly, the court ordered plaintiff to submit amended or supplemental pleadings, or suggestions on that matter, and gave United leave to respond. United attacks this portion of the decree as inconsistent with the policy of Rule 23 of the Federal Rules of Civil Procedure. It urges that the "class" aspect of a Title VII action must be established prior to judgment on the merits. We need not anticipate and resolve the array of issues which may arise in the determination of the propriety of class relief. In its present posture, this case presents the bald question of the court's power to grant such relief where justice requires such action. In our opinion, Rule 23 to the contrary notwithstanding, the district court possesses such power in Title VII cases.

 The vindication of the public interest expressed by the Civil Rights Act constitutes an important facet of private litigation under Title VII. In Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969), Judge Kerner recognized that such a suit is necessarily a class action "as the evil sought to be ended is discrimination on the basis of a class characteristic, i. e., race, sex, religion or national origin." See also Jenkins v. United Gas Corporation, 400 F.2d 28, 33 (5th Cir. 1968). At stake, therefore, are the interests of the other members of that class, and the court has a special responsibility in the public interest to devise remedies which effectuate the policies of the Act as well as afford private relief to the individual employee instituting the complaint. Bowe v. Colgate-Palmolive Co., 416 F.2d at p. 715; Hutchings v. United States Industries, Inc., 428 F.2d 303, 311–312 (5th Cir. 1970); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 428–429 (8th Cir. 1970).

9. Section 706(g) provides in part:
"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice)." 42 U.S.C. § 2000e–5(g).

Section 706(g) of the Act (note 9 *supra*) grants to federal courts plenary powers to fashion affirmative relief eradicating present discrimination and redressing the adverse consequences of past unlawful conduct. Cf. Local 53 of International Ass'n of Heat & Frost I. G. A. Workers v. Vogler, 407 F.2d 1047, 1052–1053 (5th Cir. 1969). In *Bowe,* we held that this power "should be broadly read and applied so as to effectively terminate the practice and make its victims whole." 416 F.2d at p. 721. In order to accomplish that result, we ordered that the "relief should be made available to all who were so damaged whether or not they filed charges and whether or not they joined in the suit." *Id.;* cf. Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 224, 84 S.Ct. 1226, 12 L.Ed.2d 256.

In affirming the district court's power to consider extending relief beyond the named plaintiff, we express no opinion on the ultimate decision to be reached upon remand. Whether such relief is appropriate in this case must first be determined by the court below after consideration of the arguments advanced by the parties, including references to the safeguards of Rule 23. We merely hold today that the court may so proceed.

### Injunctive Relief Was Permissible

█ Finally, United asserts that injunctive relief was improper because it had rescinded its no-marriage policy and had reinstated the plaintiff. However, when United rescinded its no-marriage policy in February 1968, previously terminated stewardesses were to be reinstated only on condition of their waiver of back pay, so that all effects of United's discriminatory policy had not been erased. Indeed, United's first offer to

reinstatement to this plaintiff was also conditioned upon waiver of her back pay, and its final offer of reinstatement with back pay was not until January 3, 1969, after the filing of this complaint.[10] In such circumstances, no abuse of the district court's discretion has been demonstrated. Cypress v. Newport News General & Nonsectarian Hospital Ass'n., 375 F.2d 648, 658 (4th Cir. 1967); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719–721 (7th Cir. 1969).

The decree below is affirmed, and the cause is remanded for further proceedings.

STEVENS, Circuit Judge (dissenting).

If, except for his sex, plaintiff's husband had precisely the same job qualifications as plaintiff, he would not have been eligible for employment as her replacement. United's requirements for employment as a flight cabin attendant simultaneously discriminated against Mr. Sprogis because of his sex and against Mrs. Sprogis because of her sex.

Since there are only two sexes, a reading of § 703(a)(1) of the Civil Rights Act of 1964[1] which leads to such an anomalous result cannot be correct. In addition, I believe United's affirmative defenses under §§ 703(e)[2] and 713(b)[3] raised issues of fact which precluded entry of summary judgment. Finally, I do not believe either the statute or Rule 23 of the Federal Rules of Civil Procedure authorizes the conversion of an individual claim into a class action after a decision on the merits.

### I.

Plaintiff does not claim that United has been guilty of any company-wide discrimination against females. About

---

10. The record does not show whether United has offered other stewardesses unconditional reinstatement. The November 7, 1968, letter agreement between United and the Airline Pilots Association International, does not discuss back pay nor whether United may hire only unmarried stewardesses. See note 2 *supra.*

1. 78 Stat. 255; 42 U.S.C. § 2000e–2(a)(1).

2. 78 Stat. 256; 42 U.S.C. § 2000e–2(e).

3. 78 Stat. 265; 42 U.S.C. § 2000e–12(b).

30% of the company's employees are females and about one-third of the female employees are married.[4] It is in the category of stewardesses that United is accussed of discriminating against females because of their sex. The record demonstrates, however, that in this category United's hiring policies have discriminated in favor of females for many years. Indeed, no male was eligible for the position which plaintiff occupied at the time of her discharge in 1966.

At the end of that year United employed 48 stewards and 3,289 stewardesses. The stewards were employed only on Hawaiian flights, and were required to have job qualifications which plaintiff did not possess.[5] For reasons unrelated to her sex, plaintiff was not eligible for the work performed by these 48 males. On the other hand, solely because of sex, no male was eligible for the position which plaintiff and 3,288 other females occupied in 1966.[6]

Although the qualifications for the position of male steward were narrowly drawn, stewardesses were one of United's largest classification of employees. Neither the classification of stewardesses, nor the limited category of male stewards on Hawaiian flights, is challenged under § 703(a) (2). The issues arise under § 703(a) (1) and, in my opinion, would be no different if United had never employed a male steward.[7] The Equal Employment Opportunity Commission makes the same objection to the no marriage rule as applied by air lines which employ no male stewards at all as it does in this case.[8]

Under the Commission's analysis of the statute, the validity of the no marriage rule turns on the question whether United can justify female sex as a bona fide occupational qualification for the position of stewardess under § 703(e). The Commission withheld any expression of opinion about the no marriage rule for over two years,[9] expressly stating in the interim that its opinion would depend on its answer to the BFOQ question.[10] All parties have assumed that if United could lawfully limit its employment of flight cabin attendants to females, the no marriage rule would be valid. Thus, under this analysis, the sufficiency of plaintiff's prima facie case under § 703(a) (1) is made to depend upon the unavail-

4. As of May, 1969, United had a total of 14,637 female employees, of whom approximately 4,700 were married. (A. 67).

5. A minimum of 10 years residence in the Hawaiian Islands and a familiarity with Hawaiian customs, traditions and tourist attractions. (A. 81)

6. Female sex was a qualification for the job of "stewardess" which was the only kind of flight cabin attendant United employed (except on the Hawaiian flights and on certain overseas charter flights for the military).

7. They would, however, be different if United had employed males and females in the same job classification and applied a no marriage rule against females only. Cf., Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613.

8. See Neal v. American Air Lines, Case No. 6-6-5759, C.C.H. Employment Practice Guide ¶ 8502, June 20, 1968. In its decision in this case, the Commission stated:

"Even if Respondent did not employ male flight cabin attendants, our Decision would be the same." (A. 19)

9. Plaintiff's charge was filed on August 9, 1966; the Commission's decision was dated August 30, 1968.

10. The letter of September 22, 1965, signed by the General Counsel to the Commission, stated, in part:

"Subject to a further interpretation of Title VII by the Commission, it would be my opinion that the rule announced by Chairman Roosevelt would not apply to airline stewardesses. If an airline may give preference to females only as stewardesses, i. e., if sex is a bona fide occupational qualification for the job of airline stewardesses, it would follow that an airline company could impose further qualifications with respect to such jobs and require that the employee be single and under a certain age. These additional qualifications would be consistent with the original qualification that the employee be a woman."

ability of United's affirmative defense under § 703(e).

As a matter of statutory construction, the Commission's analysis of the relationship between plaintiff's prima facie case and the BFOQ defense is untenable. The scope of the defense is not coextensive with the coverage of § 703(a) (1).[11] Moreover, as a matter of procedure, plaintiff should not be required to anticipate and disprove a defense which may or may not be available.[12] I believe this simple procedural point underlies the Supreme Court's summary reversal in Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613. The acceptance of job applications from men, but not from women, with pre-school age children was plain discrimination because of sex and, therefore, covered by § 703(a) (1); but whether that discrimination could be justified under § 703(e) obviously depended on the evidence to be adduced by the defendant.[13]

In my opinion, factors pertinent to the availability of the affirmative defense should not be permitted to confuse the analysis of plaintiff's prima facie case.[14]

In this case I therefore assume that the question whether a requirement for employment has any job related justification is a matter which, although relevant under § 703(e), is of no significance whatever under § 703(a) (1). The question is simply whether the requirement discriminates against an individual because of his or her " * * * race, color, religion, sex, or national origin." [15] The question then is whether United discriminated against plaintiff because of her sex.

When plaintiff's marriage made her ineligible for continued employment as a stewardess, she was offered, and rejected, an opportunity to remain in United's employ in an available ground capacity in accordance with her seniority and qualifications.[16] Neither plaintiff's marriage

11. The largest category of litigation covered by § 703(a) (1) involves charges of discrimination because of race, but the BFOQ defense is not available in such cases.

12. "When a proviso like this carves an exception out of the body of a statute or contract, those who set up such exception must prove it." Javierre v. Central Altagracia, 217 U.S. 502, 508, 30 S.Ct. 598, 599, 54 L.Ed. 859.

13. "Section 703(a) of the Civil Rights Act of 1964 requires that persons of like qualifications be given employment opportunities irrespective of their sex. The Court of Appeals therefore erred in reading this section as permitting one hiring policy for women and another for men—each having pre-school age children. The existence of such conflicting family obligations, if demonstrably more relevant to job performance for a woman than for a man, could arguably be a basis for distinction under § 703(e), of the Act. But that is a matter of evidence tending to show that the condition in question 'is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.' The record [before us], however, is not adequate for resolution of these important issues." 400 U.S. at 544, 91 S.Ct. at 498.

14. The early history of the Robinson Patman Act was plagued by confusion between affirmative defenses and the prima facie case. Thus, one of the arguments laid to rest by Mr. Justice Black in Federal Trade Commission v. Morton Salt Co. was the claim that a cost justified price differential was not a "discrimination" within the meaning of the statute. See 334 U.S. 37, 44–45, 68 S.Ct. 822, 92 L.Ed. 1196. See also Standard Oil Co. v. Federal Trade Commission in which the Commission contended that proof of one kind of prima facie case foreclosed the affirmative defense of meeting competition in good faith. 340 U.S. 231, 250–251, 71 S.Ct. 240, 95 L.Ed. 239.

15. Of course, a requirement need not discriminate *solely* because of one of these factors. If, for example, a requirement operates "to disqualify Negroes at a substantially higher rate than white applicants," it may be discriminatory even if neutral on its face. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158.

16. "17. During the time that United's no-marriage rule was in force and effect, all stewardesses who notified the Company of their intention to marry and whose employment would be terminated by application of the rule were afforded an opportunity, at their request, to remain in the

nor her sex disqualified her from employment by United.

The no marriage rule was only one of several requirements for the position of stewardess. Each of the requirements, whether rational or irrational, was an impediment to employment as a stewardess. All of the requirements discriminated against stewardesses as opposed to other females.[17] None, however, discriminated against females as opposed to males because no male was eligible for employment in the position of stewardess.

As I read § 703(a) (1), a prima facie case of discrimination is established by showing that a rule has a differential impact on one of the classes of people protected by the Act.[18] A simple test for identifying a prima facie case of discrimination because of sex is whether the evidence shows treatment of a person in a manner which but for that person's sex would be different.[19]

Under this test, plaintiff was not the victim of discrimination because of sex, whether we assume the relevant classification is all United employees or just flight cabin attendants,[20] for she has not

shown that if she were a member of the opposite sex she would have had any greater employment opportunities either as a "stewardess" or as a "non-stewardess." Since the rule which is challenged disqualified all males and only some females from work in the particular job she desired (and since she does not contend that she was disqualified for work in any other position), in my opinion she was not discharged "because of [her] sex" within the meaning of § 703(a) (1).

I do not believe the Commission's contrary view is entitled to great deference because it is predicated on an untenable analysis of the statute. I have greater deference for Judge Cummings' analysis, but nevertheless am persuaded that he adopts a test of discrimination that was not intended by Congress.

As I understand the majority's test, it does not focus on the impact of a rule on the employment opportunities of the members of one sex as opposed to the other; instead, the critical inquiry is whether the rule is an irrational impediment derived from a stereotyped attitude toward females. As a matter of policy, the majority's view may not only be contemporary but also wise.[21] I am unable,

17. Many unmarried females would be disqualified for work as a stewardess by age, size, education, or personality qualifications.

18. "First, it should be up to the plaintiff to show that the standard in question does have a differential impact on some class of people protected by the Act. Without such a showing, it is clear the employer should be able to continue to use the standard, whether job-related or not. Moreover, the differential impact should be substantial." Developments in the Law—"Employment Discrimination in Title VII of the Civil Rights Act of 1964," 84 Harv.L.Rev. 1109, 1118.

(footnote at top of left column, continued:) employ of United in some available ground capacity in accordance with their seniority and qualifications. I am informed and believe, on the basis of a statement made by Mary B. Sprogis, that despite her failure to notify the Company of her intention to marry, she did receive and reject such an offer on or about June 19, 1966." (A. 67) This affidavit is uncontradicted; on motion for summary judgment it must be accepted as true.

19. "Whether based upon an unsubstantiated stereotype of the sexes, or upon valid factual data on their intrinsic differences, treatment of a person in a manner which but for that person's sex would be different is a prima facie unlawful employment practice as defined in section 703 (a)." Op. cit. supra at p. 1170.
See also:
"It is the fact of the person being a mother—i. e., a woman—not the age of the children, which denies employment opportunity to a woman which is open to a man." (Emphasis added.) Phillips v. Martin Marietta Corp., 416 F.2d 1257 (5th Cir. 1969) dissenting opinion of Judge Brown at p. 1259.

20. Viewing the relevant class as United's married employees, the same standard has been applied for men and women. No married man and no married woman is eligible for employment as a stewardess. Conversely, marriage is not a disqualification for any "non-stewardess" position.

21. It may also be unwise. The removal of irrational stereotyped categories within an area of exclusive female employment

however, to find any guidelines in the language of § 703(a) (1) for differentiating between irrational stereotypes and reasonable requirements. Even assuming *arguendo* that great deference should be accorded to the Equal Employment Opportunity Commission, I do not believe Congress intended to entrust the Commission with authority to draw such lines. In the long run, I believe justice will be served and the objectives of the legislation best accomplished by applying the simple comparative standard suggested by the language of the statute. The benefits of an objective standard will be shared by those enforcing the statute and those faced with problems of compliance.

In my opinion, United did not violate § 703(a) (1) by discharging plaintiff from a position which she could not have retained if she had been a man.

## II.

In September, 1965, the Commission issued an opinion that a rule restricting the employment of married females but not males is a prohibited discrimination because of sex. The opinion did not expressly indicate that it was intended to apply to a company or job classification in which all employees were members of the same sex. On behalf of various air lines, including United, the Air Transport Association therefore asked the Commission if its opinion applied to stewardesses. The written response of the Commission's General Counsel on September 22, 1965, stated, in part:

"A question has arisen whether or not this interpretation applies to airline stewardesses, with respect to whom companies generally require resignation upon marriage and also reas-

signment within the company or retirement upon attaining the age 32.

" * * * If an airline may give preference to females only as stewardesses, *i. e.*, if sex is a bona fide occupational qualification for the job of airline stewardesses, it would follow that an airline company could impose further qualifications with respect to such jobs and require that an employee be single and under a certain age. These additional qualifications would be consistent with the original qualification that the employee be a woman.

"The Commission has not yet determined whether or not sex is a bona fide occupational qualification for the position of airline stewardess * * *.

"It would be safe, I believe, to answer any inquiries on this point simply by saying that the Chairman's ruling of September 16th cannot apply to airline stewardesses until the Commission has first resolved the question of bona fide occupational qualification."

The record raises issues of fact as to whether this document was intended merely as an internal memorandum for the guidance of the Commission's staff or, as United contends, as an opinion upon which the air lines could safely rely. As I read § 713(b),[22] If United in good faith was acting in reliance on this written interpretation, plaintiff may not recover damages or back pay. I am somewhat skeptical about United's ability to prove sufficient reliance to justify a discharge (as contrasted with a refusal to hire a new employee) while the legal status of the no marriage rule was under review by the Commission, but I believe it made a sufficient factual showing to foreclose the entry of summary judgment.

---

would increase the supply of eligible female applicants without changing the demand for employees and would thus tend to depress the female wage level.

22. "(b) In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account

of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission. * * * "

I also consider it most doubtful that a job related justification for the no marriage rule can be proved. Again, however, it seems to me that the facts disclosed in United's affidavits entitled it to a hearing on the merits of its § 703 defense.[23]

### III.

A jurisdictional precondition to the commencement of a private action under Title VII of the Civil Rights Act of 1964 is the filing of a charge with the Commission within 90 days after the occurrence of the unlawful employment practice. Choate v. Caterpillar Tractor Company, 402 F.2d 357, 359 (7th Cir. 1968). In Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969) this court read this condition out of the statute for members of a class represented by a plaintiff who had filed the required charge.[24] If I read the district court order correctly, the court now holds that even an individual claim eliminates the jurisdictional precondition for all similarly situated persons who might have been represented in a class action. I

find no authority in the statute for such an expansion of the right to sue for back pay.

Nor can I find any basis in Rule 23 of the Federal Rules of Civil Procedure for permitting an individual claim to be converted into a class action after a decision on the merits. Rule 23(c) (1) provides:

> "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

At a minimum, this rule requires the class to be defined before the merits of the case have been decided. This requirement is, of course, of special importance in litigation involving claims for damages or back pay. A procedure which permits a claim to be treated as a class action if plaintiff wins, but merely as an individual claim if plaintiff loses, is strikingly unfair.[25]

I respectfully dissent.

---

23. " * * * The rule was founded on the belief that the irregularity and uncertainty inherent in stewardesses' work schedules were in conflict with the woman's role in married life and that such a conflict would have an inevitable adverse effect upon her job performance and motivation. This belief, which stemmed from United's own experience with married stewardesses, has since been confirmed by psychiatrists and marriage counsellors who have studied this question at the request of United and the Air Transport Association ('ATA'). These experts have concluded and reported to United directly, or through the ATA, that marriage tends to bring about changes in job attitudes which seriously impair their effectiveness as stewardesses. They tend to become preoccupied with their marital responsibilities, less dedicated, less sensitive to the needs of passengers and more resentful toward their jobs. * * * Again, if there are women who are able to adjust their family lives to this type of work schedule as readily as married men, United has discovered no reliable tech-

nique of selecting them out in advance of hiring.

" * * * One further consideration leading to the adoption and retention of the no-marriage rule has been United's concern over the increased likelihood of pregnancy which marriage presents. Married stewardesses with unknown or intentionally concealed pregnancies represent dangers to themselves and to their unborn children and a potential source of embarrassment to the Company. Morning sickness and miscarriage due to rough weather exemplify the hazards which United wishes to avoid." (A. 64–65)

24. The holding was supported by Fifth Circuit decisions sustaining claims for equitable relief on behalf of class members who had not filed charges. See Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968); Jenkins v. United Gas Corp., 400 F.2d 28, 35 (5th Cir. 1968).

25. See Notes of Advisory Committee on Rules accompanying the 1966 revision of Rule 23 of the Federal Rules of Civil Procedure.