Sherry EIRHART and Equal Employment Opportunity Commission, Plaintiffs,

v.

LIBBEY–OWENS–FORD CO., Defendant.

Nos. 76 C 3182, 78 C 2042.

United States District Court, N. D. Illinois, E. D.

June 1, 1979.

Ronald S. Adelman, Thomas J. Henry, Fred Lane (appointed), Munday & Lane, Chicago, Ill., Kathleen B. Baliunas, Chicago, Ill., Abner W. Sibal, William L. Robinson, Washington, D. C., Attys., for plaintiffs.

Robert S. Soderstrom, James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., Attys., for defendant.

ROSZKOWSKI, District Judge.

## ORDER

Plaintiffs Sherry Eirhart and the Equal Employment Opportunity Commission brought this action against defendant, Libbey-Owens-Ford Co. (the Company), charging that the Company imposes minimum height and weight standards upon applicants for employment which discriminate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] The Company has moved for summary judgment against both plaintiffs. The Commission has also made a motion for summary judgment.[2]

The facts are simple and apparently not in dispute. On March 13, 1970, the EEOC notified Libbey-Owens-Ford that, after an investigation and attempted conciliation, (1) an impasse had been reached, (2) individual complainants were to be given right to sue letters, and (3) the matter was being referred to the Attorney General for possible action under § 707 of Title VII, 42 U.S.C. § 2000e–6 (1976). The investigation by the Commission dealt only with employment

---

1. Plaintiff Eirhart stands in the same position as the Commission since the defense urged by the Company in its motions and in its response to the Commission's motion is equally applicable to her cause of action. Additionally, in her memorandum opposing defendant's motion for summary judgment, plaintiff Eirhart repeats in abbreviated form the arguments of the Commission. The discussion in this case, accordingly, while referring mostly to the EEOC and the Company, applies equally to her.

2. The EEOC also moved to strike the Company's second affirmative defense of laches. Because of the determination of the case, there is no need to reach this issue.

practices which had been complained of to the Commission and did not deal with hiring standards. The matter was referred to the Attorney General pursuant to § 705(g)(6) and the Justice Department conducted its own investigation, based on the referral. The Justice Department filed a complaint against the Company on July 20, 1970, including a charge of discriminatory hiring practices based on height and weight, in writing as of February 4, 1970. Negotiations between the Company and the Justice Department ensued, and resulted in a Consent Order being entered on February 3, 1971 by the United States District Court for the Northern District of Ohio, Western Division, in *United States v. Libbey-Owens-Ford Co.*, 3 EPD ¶ 8052 (1971). Subsequently, on November 20, 1974, the Commission was substituted on its own motion as party-plaintiff in place of the Attorney General, pursuant to § 707(d), 42 U.S.C. § 2000e–6(d), which transferred the functions of the Attorney General to the EEOC.[3]

Paragraph XI–A of the Consent Order provides:

> Hiring in all Toledo area plants shall be carried out in a non-discriminatory basis. Minimum physical and non-physical requirements for entry level jobs, which were in writing as of February 4, 1970, shall continue to be applicable to both males and females seeking employment with the Company, except that the minimum weight requirement for females shall be 110 pounds.

These standards include the 5'4" height requirement and have been in effect at the defendant's Ottawa, Illinois plant since December 1970. Plaintiffs contend that these standards discriminate against women and that the defendant has not demonstrated their job relatedness. The defendant does not address those issues, and relies instead on the Consent Order, maintaining that § 713(b), 42 U.S.C. § 2000e–12(b) gives it a real and complete immunity against the present Title VII actions.[4] The question before the Court is whether the Consent Order constitutes "a written interpretation or opinion of the Commission" within the meaning of the statute and upon which the Company could rely in good faith as a defense to the instant Title VII actions.

It is clear that the motivation of the Company in initially formulating and imposing the height and weight requirements is irrelevant. "Title VII is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation.'" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 422, 95 S.Ct. 2362, 2374, 45 L.Ed.2d 280 (1975), quoting *Griggs v. Duke Power*, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Congress has, however, recognized a narrowly defined good faith defense. While narrowly defined, that defense gives complete immunity for employer conduct falling within § 713(b). Courts are not free to expand the immunity beyond the statute. *Albemarle*, 422 U.S. at 423, n.17, 95 S.Ct. 2362.

On the issue of whether the Consent Order might be relied upon to give immunity under § 713(b), the arguments of the parties take essentially the same analytical steps. The first step is to determine whether the Consent Order is a "written interpretation or opinion" within the meaning of the statute. If it is, the next step is to determine whether it is "of the Commission." Finally, if both of these are deter-

---

**3.** 42 U.S.C. § 2000e–6(d) provides: "Upon the transfer of functions provided for in subsection (c) of this section, in all suits commenced pursuant to this section prior to the date of such transfer, proceedings shall continue without abatement, all court orders and decrees shall remain in effect, and the Commission shall be substituted as a party for the United States of America, the Attorney General, or the Acting Attorney General as appropriate."

**4.** 42 U.S.C. § 2000e–12(b) provides: "In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with and in reliance on any written interpretation or opinion of the Commission . . . . ."

mined affirmatively, the third determination to be made is whether a Consent Decree entered in Ohio, explicitly binding and applying directly only on the Company's Toledo area plants, may be relied upon by the Company in its Ottawa, Illinois plants. The Commission would have the Court reach a negative answer at each step; the Company argues for an affirmative answer to each proposition.

■ At the first step, whether the Consent Order can be considered a "written interpretation or opinion," the EEOC points to its guideline 29 C.F.R. § 1601.33 contending under that guideline *only* an "opinion letter" signed by the General Counsel on behalf of the Commission or matter published in the Federal Register can meet the statutory language. Since a consent order clearly falls under neither of those categories, the Commission contends that it cannot be a written interpretation or opinion and cannot give rise to the statutory good faith reliance defense.

While guidelines promulgated by administrative agencies construing the statutes with whose administration they have been entrusted by Congress are often afforded great deference by the courts, that deference is a result only of their persuasive power of reasoning "[as] a body of experience and informed judgment." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1949). When Congress enacted Title VII, it did not confer upon the EEOC authority to promulgate regulations which would have the force of law. *General Electric Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). "Without that authority all rules on agency issues are necessarily interpretative [rules] regardless of their impact . . . and even though courts often defer to an agency's interpretative rule they are always free to choose otherwise." *Joseph v. U. S. Civil Service Commission*, 180 U.S.App.D.C. 281, 295 n.26, 554 F.2d 1140, 1154, n.26 (D.C. Cir. 1977); *General Electric Co. v. Gilbert, supra.*

Accordingly, 29 C.F.R. § 1601.33 is not binding on this Court.[5] The Commission, however, cites cases indicating that 29 C.F.R. § 1601.33 has been given deference by the courts. *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971) and *Local 189, United Papermakers & Paperworkers v. United States*, 416 F.2d 980 (5th Cir. 1969), *cert. den.* 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970), both held that the guideline is a reasonable interpretation of § 713(b). The Commission relies particularly heavily on the Seventh Circuit case of *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1971), *cert. den.* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). In this case, the Commission contends, the Seventh Circuit did more than "defer" to the guideline: it held that the guideline *must* be complied with to constitute a written interpretation or opinion under the statute.

*Robinson* and *Local 189* did not deal with anything as formal as a consent order. *Robinson* concerned a "no reasonable cause" determination by the EEOC that was held not to be a written interpretation or opinion. And *Local 189* involved an oral statement by someone other than the General Counsel of the Commission.

*Sprogis*, on the other hand, is more on point. It dealt with "a so-called 'letter of opinion' of the Commission's General Counsel" which was held to fall within 29 C.F.R. § 1601.33. At issue in that case was whether the document in question fell within the guideline. Despite the Commission's contention to the contrary, the court did not require that the guideline be adhered to in all cases. Rather, the court was concerned, as was Judge Wisdom in *Local 189, supra*, that a broader reading of the language in § 713(b) "might bind the Commission to informal or unapproved opinions volunteered by members of its staff." *Sprogis*, 444 F.2d at 1200. The court held that the particular "letter of opinion" in that case ran afoul of those dangers and did "not

---

**5.** The notice published in the Federal Register, 35 F.R. 18692, on December 9, 1970 is similarly entitled only to consideration as a factor in making the determination of the first step and is not binding.

indicate a considered legal judgment approving the [employment] policy under the Act." *Sprogis*, 444 F.2d at 1201.

■ By contrast, the Consent Order in the present case presents none of the dangers which concerned the court in *Sprogis*, and does constitute a "considered legal judgment" approving the employment policy. The Consent Order is neither informal nor unapproved. It is not an internal agency memorandum. It is rather an order entered into by the United States District Court for the District of Ohio, and binding upon the parties. Assuming for the moment that the EEOC was a party, the order would represent an agreement entered into by an authorized officer of that agency. Even without such an assumption, the Consent Order constituted the considered legal judgment of both the Department of Justice and the District Court, approving, indeed mandating, the height and weight standards at the Company's Toledo area plants. The Consent Order in this case was published in full in Employment Practice Decisions, a reporter which reports the full official texts of leading federal and state decisions in the area. All of these factors minimize, if not eliminate, the problems perceived by the *Sprogis* court. Despite that court's use of 29 C.F.R. § 1601.33 in that case, the guideline is not binding on this Court in this case.

At least one court has held that a Consent Order can be a written interpretation or opinion. *EEOC v. American Telephone & Telegraph Co.*, 419 F.Supp. 1022, 1055 n.34 (E.D.Pa.1976), *affd.* 556 F.2d 167 (3d Cir. 1977.)[6] The parties spend a good deal of time debating the applicability of that case to the present case, but both agree that the holding in that case was appropriate. The Commission's agreement to this point is at odds with its contention that only those items specified in 29 C.F.R. § 1601.33 are written interpretations or opinions. Despite the Commission's emphasis on the "accompanying documents" in the case, the fact remains that the Consent Order was held to satisfy the statutory requirement.

There is no reason why a consent order should not fulfill the requirements of § 713(b). Such an order is entered into in open court. It is binding on the parties, and if the EEOC is one of those parties, is binding on the EEOC. Even more than an "opinion letter," an agreement to a consent order by the EEOC represents a formal agency approval of the policies embodied in the order. The Consent Order entered on February 3, 1971, therefore, constitutes a written interpretation or opinion within the meaning of § 713(b).

This being so, it becomes necessary to make a determination of the second step, whether the written interpretation or opinion, the Consent Order, is "of the Commission."

The EEOC investigation, the failed conciliation attempt, the referral by the EEOC of the matter to the Attorney General, the filing of the complaint by the Attorney General, and the entering of the Consent Order all occurred prior to the 1972 amendments to Title VII. At that time, the Commission had no authority to institute suits in the courts. Its function was limited by the Act to "investigation of employment discrimination charges and informal methods of conciliation and persuasion." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977). Litigation was reserved to private individuals under § 706 and the Attorney General under § 707. Section 705(g)(6) gave the Commission the power to refer matters to the Attorney General "for the institution of a civil action by the Attorney General under section 707, and to advise, consult, and assist the Attorney General on such matters." In a very real sense, then, the Attorney General acted as an extension of the Commission in cases referred to that office under § 705(g)(6). The Attorney General, when it desired, picked up matters where the Commission had left off, matters referred to it by the Commission, and continued with them to fruition. While the

---

**6.** This "holding" is a two-sentence footnote which was not decisive in the case.

Supreme Court in *Occidental Life,* 432 U.S. at 359, 97 S.Ct. at 2451 states that the "failure of conciliation efforts terminated the involvement of the EEOC," that language refers only to the Commission's involvement in a formal way. The Commission still had the power under the statute to participate in and have an impact upon the instigation and progress of civil actions brought by the Attorney General.

The referral in the present case was a referral from the EEOC to the Attorney General pursuant to § 705(g)(6).[7] The Attorney General accepted the Commission's recommendation and instituted the civil action that resulted in the Consent Order of February 3, 1971.

The Commission contends that the action by the Attorney General in filing the complaint and in negotiating the Consent Order was an independent action of the Department of Justice which did not involve the EEOC. It points out that the complaint of July 20, 1970 names the United States as plaintiff and states that the action was brought by the Attorney General on behalf of the United States. The name of the EEOC is not mentioned anywhere in the complaint. Jurisdiction is founded in the complaint on § 707(b), which gives the Attorney General the authority to file a civil action. While these facts could lead to the conclusion urged by the EEOC that it was not involved in the complaint or the Consent Order, the facts are also consistent with the proposition that the Attorney General was acting as an extension of the Commission, on a referral from the Commission. The Department of Justice was the only office under Title VII with the authority to bring the action. It is natural that it should be the plaintiff in that circumstance. Since only the Attorney General could bring the action, jurisdiction must necessarily have been predicated upon the statute giving him the authority to do so. It is also natural that the EEOC would not be named in the complaint. As the Supreme Court noted in *Occidental Life, supra,* the Commission's formal involvement in the case was ended when it referred the case pursuant to § 705(g)(6). But that does not mean that the Commission was no longer involved. Under the statute, it could still have had an impact on the case through its power to advise, consult and assist. The EEOC has cited no authority and given no examples to demonstrate that the absence of the name of the EEOC from a complaint means that the EEOC was not involved.

The best argument made by the Commission that the Consent Order was the result of actions taken by the Attorney General and not the Commission was that the complaint of July 20 included an allegation that the hiring standards, identical to those at issue in this case, were discriminatory while the investigation referred to the Attorney General by the Commission made no mention of the hiring standards. This would seem to indicate an independent investigation by the Justice Department and, therefore, an independent action. But despite this appearance of non-involvement, at least on this point, the Commission concedes that it was bound by the Consent Order,[8] including the height and weight hiring standards. Thus, while the Commission has not necessarily "ratified" the Consent Order as contended by the Company, it has placed itself in the position of a party to the Consent Order. Only a party is bound by a judgment. 1B Moore's Federal Practice ¶ 0.411.

---

7. The March 19, 1970 letter, with the EEOC letterhead, from the Commission's General Counsel to the Company stated, "This is to advise that this office, pursuant to authority granted under Section 705(g)(6) of Title VII of the Civil Rights Act of 1964, has referred the above cause to the Attorney General with the recommendation for the institution of a civil action under Section 707 of the Title."

8. "There is no doubt that the Commission was bound to defer to the terms of the Ohio Consent Order during its term, as to the Defendant's Toledo area plants. Therefore, in issuing its 'no cause' determination, the Commission's Cleveland District Office cited the Consent Order as the sole reason for its findings." Plaintiff's Reply to Defendant Memorandum Opposing Plaintiff's Motion for Summary Judgment, p. 6.

In fact, the Commission is a party to the Consent Order, though it was not a party when it was entered in 1971. On November 20, 1974, the District Court for the Northern District of Ohio granted the Commission's motion and ordered that the Commission be substituted as party-plaintiff for the Attorney General in the original unit which resulted in the Consent Order. This action was taken pursuant to the 1972 amendments to Title VII which provided for the transfer of the Attorney General's function in the area to the EEOC. 42 U.S.C. § 2000e–6(c), (d); § 707(c), (d) of Title VII. Section 707(d) provides that "[u]pon the transfer of functions . . . all court orders and decrees shall remain in effect." That, of course, is true of the Consent Order in this case.

The Consent Order was a direct result of the investigation by the Commission and the referral of the case to the Attorney General. The Commission concedes that it is bound by that Consent Order, and is, of particular importance, a party to it. In light of these circumstances, the logical conclusion is that the Consent Order, which is a written interpretation or opinion, is "of the Commission."

Since the Consent Order is a "written interpretation or opinion of the Commission" within the meaning of § 713(b), it becomes necessary to determine whether the Company was justified in relying on it in imposing the height and weight standards in its Ottawa plants. The Consent Order, by its own terms, applies only to the Company's Toledo area plants. Thus, it is only binding upon the EEOC, as party-plaintiff as of 1974, and upon the Company in the Toledo area. Both parties were free to disregard it in other places.

The Commission contends that this fact separates the present action from the Consent Order and denies the Company the defense embodied in § 713(b). The Company, on the other hand, contends that other federal agencies have approved of the standards included in the Consent Order in other places than Toledo and that the need for continuity of action for companies reporting to various federal agencies should permit trans-geographic application of the Consent Order. The Company further contends that a contrary decision would result in different hiring standards being applied in different places, causing inconsistency within the Company and potentially engendering further suits based on that inconsistency.

■ That other federal offices or agencies have approved the height and weight standards is irrelevant to a Title VII action. Each office or agency considers the standards as they fit into its regulatory sphere and not as an interpretation of Title VII. "[R]eliance upon Government approval of or participation in the formulation of the employment practice is not generally a defense in a Title VII suit." *Stevenson v. International Paper Co.*, 516 F.2d 103, 111 (5th Cir. 1975).

But this does not mean that the Consent Order cannot be the basis of a defense in this case. The issue is not whether the Order is binding in Ottawa, or whether the Company might rely on approval by *other* Governmental agencies. Rather the issue is whether the Consent Order, being a written interpretation or opinion of the Commission, could be relied upon by the Company. Section 713(b) contains no requirements that the written interpretation or opinion be binding upon anyone; it makes no mention of geographic limitations. Immunity is given for good faith *reliance*. The effect is the same as it would be had the Commission sent an opinion letter to the Company, and the Company had relied upon that.

Although the Company was bound by the Consent Order only in the Toledo area, it applied and continues to apply hiring standards identical to those in the Consent Order at its Ottawa facility. The Consent Order states that "the minimum weight requirement for females shall be 110 pounds." As is evident from the reference to this as an "exception", this weight standard was not included in the original standards in writing as of February 4, 1970. That the Company applies standards in Ottawa identical to those in the Consent Order when it

is not bound to do so indicates reliance on the Order.[9]

There is good reason to permit reliance on an Order applying to a different geographic area, especially when the reliance is by the same entity subject to the Order as in the present case. It promotes consistency in hiring standards throughout the corporate structure. More importantly, a written interpretation or opinion of the Commission indicates the Commission's belief that the standards are appropriate under Title VII. In the present case, the Consent Order indicates the Justice Department's and the District Judge's opinion that the standards are appropriate. Parties should not be subject to differing interpretations of Title VII simply because the location of their places of operation are in different geographic areas. The third step in the analysis, whether the Company was justified in relying on the Ohio Consent Order in implementing the height and weight standards in Ottawa, is answered in the affirmative. The Company was justified in its reliance.

Since there is no genuine issue of material fact, and since the Company relied in good faith on a written interpretation or opinion of the Commission, 42 U.S.C. § 2000e–12(b), the Company's motions for summary judgment against the plaintiffs Sherry Eirhart and the Equal Employment Opportunity Commission are granted.

Plaintiff's motion to strike defendant's second affirmative defense is moot, as is the Commission's motion for summary judgment.

---

**9.** There are other indications of reliance. Before negotiations began with the Justice Department, the Company apparently had an even greater weight requirement. Exhibit B of Defendant's Motion to Summary Judgment. That earlier requirement has not been employed at Ottawa, despite not being bound to use the lesser 110 pound standard there. Additionally, the identical height and weight standards have been used in the Company's affirmative action programs. Exhibit G of Defendant's Motion for Summary Judgment.