Sherry **EIRHART,** Plaintiff-Appellant,

v.

**LIBBEY–OWENS–FORD COMPANY,** Defendant-Appellee.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** Plaintiff-Appellant,

v.

**LIBBEY–OWENS–FORD COMPANY,** Defendant-Appellee.

Nos. 79–1756, 79–1757.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1979.

Decided Feb. 12, 1980.

Thomas R. Meites, Chicago, Ill., for Sherry Eirhart.

Vella M. Fink, Washington, D. C., for EEOC.

James P. DeNardo, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and CUDAHY, Circuit Judge.

CASTLE, Senior Circuit Judge.

Plaintiff-appellant Equal Employment Opportunity Commission (EEOC) filed this suit, challenging hiring practices of defendant-appellee Libbey-Owens-Ford Co. (LOF). The EEOC suit was subsequently consolidated with a similar suit filed by plaintiff-appellant Sherry Eirhart. The district court then granted LOF's motion for summary judgment as to both Eirhart and the EEOC. The basis for the district court's decision was a determination that LOF was immune from any suit under § 713(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–12(b). We hold that the district court erred in granting LOF immunity from suit and, accordingly, reverse the decision of the district court.

I.

The facts of this case are apparently not in dispute. In 1968 the EEOC received a complaint against, and started investigating, the employment practices at one of the LOF's plants in Toledo, Ohio (Plant 8). The complaint alleged the restriction of female employees to two departments containing lower paying jobs and the maintenance of seniority lists which were segregated on the basis of sex. The EEOC then issued a "reasonable cause" letter and entered into conciliation negotiations with LOF. The

negotiations failed and the EEOC referred the case to the Justice Department with a recommendation that a civil suit against LOF be instituted.[1] Such a suit was filed, *United States v. Libbey-Owens-Ford Co.*, No. C70–212 (N.D. Ohio, filed July 20, 1970), and on February 3, 1971 a consent order was entered into by the parties and approved by the United States District Court for the Northern District of Ohio, 3 Emp. Pract. Dec. ¶ 8052 (1971). The order, which dealt primarily with transfers, promotion, and seniority rights, included a provision concerning height and weight requirements. The provision stated that "[m]inimum physical and non-physical requirements for entry level jobs, which were in writing as of February 4, 1970, shall continue to be applicable to both males and females seeking employment with the Company, except that the minimum weight requirement for females shall be 110 pounds." The written physical requirements referred to the consent order included a minimum height requirement of 5′ 4″.

In December, 1970 hiring standards including a minimum height requirement of 5′ 4″ and minimum weight requirement of 110 pounds were instituted at LOF's plant in Ottawa, Illinois. In August, 1976 Sherry Eirhart filed a lawsuit challenging the height requirements of the Ottawa plant. *Eirhart v. Libbey-Owens-Ford Co.*, 482 F.Supp. 357, No. 76 C 3182 (N.D.Ill.). In May, 1978 EEOC filed a lawsuit challenging the Ottawa plant's height and weight requirements. *EEOC v. Libbey-Owens-Ford Co.*, No. 78 C 2042 (N.D.Ill.). These suits were consolidated by an order dated September 18, 1978. On June 1, 1979 the district court, in ruling on cross-motions for summary judgment, granted LOF's motions for summary judgment against both Eirhart and the EEOC. Both Eirhart and the EEOC have appealed and jurisdiction of this Court is based on 28 U.S.C. § 1291.

## II.

The basis for the district court's opinion is § 713(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–12(b). That section provides, in pertinent part, that:

> (b) In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission . . . . .

The district court held that LOF was immune from suit under Section 713(b) and that LOF's immunity entitled the company to summary judgment.

In order to reach that conclusion, the district court decided that the Ohio consent decree was indeed a "written interpretation or opinion of the Commission." This proposition misconstrues both Section 713(b) and the nature of consent decrees. As noted by the Supreme Court:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

---

1. At that time the EEOC did not have the authority to file such a suit. The EEOC's authority was limited to investigation of charges, conciliation and persuasion. Civil Rights Act of 1964, Pub.L. No. 88–352, § 706, 78 Stat. 259 60. Instead, such suits were filed by the Attorney General. *Id.*, § 707, 78 Stat. 261 62.

For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.

*United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971)(emphasis in original)(footnote omitted). Such a compromise and product of bargaining skill between two parties cannot be deemed to be an "order or opinion" of either of the parties. It would not be appropriate for this Court to expand the narrowly drawn Congressional grant of immunity contained in Section 713(b) to include such a decree. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 423 n. 17, 95 S.Ct. 2362, 2374 n. 17, 45 L.Ed.2d 280 (1975). *See also id.* at 444, 95 S.Ct. at 2385 (Rehnquist, J., concurring).

Moreover, in granting LOF's motion for summary judgment, the district court chose to ignore the EEOC's regulations concerning Section 713(b). Those regulations, in pertinent part, state that:

Only the following may be relied upon as a "written interpretation or opinion of the Commission" within the meaning of Section 713 of Title VII:

(a) A letter entitled "opinion letter" and signed by the General Counsel on behalf of the Commission, or

(b) Matter published and specifically designated as such in the Federal Register, including the Commission's Guidelines on Affirmative Action, or

(c) A Commission determination of no reasonable cause . . . when such determination contains a statement that

it is a "written interpretation or opinion of the Commission."

29 C.F.R. § 1601.33 (1979).[2]

 In determining whether the district court properly ignored these regulations we take note of the fact that Congress, in adopting Title VII, did not specifically give the EEOC authority to promulgate interpretative regulations under that Title. *See General Electric Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976). Nevertheless, the EEOC is the agency charged with the administration of Title VII and, as such, its interpretations are entitled to great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). Accordingly, we view these regulations with the realization that:

[T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), *quoted in General Electric Co. v. Gilbert*, 429 U.S. at 141–42, 97 S.Ct. at 410.

 When viewed in this manner these regulations are reasonable and, in this case, persuasive. *See Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1200 (7th Cir.),

---

2. Other relevant regulations provide that:

§ 1601.31 Request for interpretation or opinion.

Any interested person desiring a written interpretation or opinion from the Commission may make a request therefor. However, issuance of such interpretations or opinions is discretionary.

§ 1601.32 Contents of request; where to file.

A request for an "opinion letter" shall be in writing, signed by the person making the request, addressed to the Chairman, Equal

Employment Opportunity Commission, 2401 E Street N.W., Washington, D.C. 20506, and shall contain:

(a) The names and addresses of the person making the request and of other interested persons.

(b) A statement of all known relevant facts.

(c) A statement of reasons why the interpretation or opinion should be issued.

29 CFR §§ 1601.31, .32 (1979).

*cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971) (regulation "reasonably confines reliance justified under Section 713(b) to considered official expressions of opinion taking two specifically defined forms"); *Local 189, United Papermakers & Paperworkers v. United States*, 416 F.2d 980, 997 (5th Cir. 1969), *cert. denied*, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970)(regulation "gives reasonable scope to the statutory provision"). We also note that the EEOC's position on what constitutes a "written interpretation or opinion of the Commission" has remained basically unchanged since the passage of Title VII. 30 Fed.Reg. 8,409 (1965). *See General Electric Co. v. Gilbert*, 429 U.S. at 142–43, 97 S.Ct. at 411. Furthermore, expanding Section 713(b) to the case at hand would undermine the EEOC's system for granting immunity under that section. The EEOC's system "simply insures that the only Commission interpretations and opinions which will be given binding effect . . . are those based either upon a solid factual foundation or upon the most thorough considerations of the potential factual situations to which the rule might apply." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 801 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). Therefore, we conclude that the district court erred in ignoring the EEOC guidelines as to what constitutes a "written order or opinion of the Commission" under Section 713(b).

The EEOC also argues that the consent decree simply was not "of the Commission". This argument is based on the fact that the EEOC did not participate in the drafting of the consent decree. Although the EEOC investigated LOF's Plant 8, the Commission did not have enforcement powers at that time. Instead, the EEOC was required to refer the case to the Attorney General, under whose auspices the suit was filed and the consent decree entered into. However, the EEOC has been substituted for the Attorney General as a party-plaintiff in the Ohio matter. *EEOC v. Libbey-Owens-Ford Co.*, No. C70–212 (N.D. Ohio, Nov. 20, 1974) (order granting substitution). The substitution came about when Congress transferred enforcement powers under Title VII from the Attorney General to the EEOC. Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 107. In light of our rulings on the other issues involved in this case, we need not reach this issue.

### III.

LOF raises several arguments in support of the district court's decision. One such argument is based on *EEOC v. Amer. Tel. & Tel. Co.*, 419 F.Supp. 1022 (E.D.Pa.1976), *aff'd*, 556 F.2d 167 (3d Cir. 1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978). The argument relies on a footnote in which the district court, in discussing immunity under Section 713(b), stated that: "[t]he Consent Decree and its accompanying documents in the instant case certainly constitute such an interpretation or opinion [of the Commission]." 419 F.Supp. at 1055 n. 34. However, this footnote offers little support for LOF; the documents accompanying the consent decree in the *A.T. & T.* case included two documents which were entitled "opinion letters," were signed by the General Counsel of the EEOC, and stated that they were written "on behalf" of the EEOC. LOF's Ohio decree had no such accompanying documents and, therefore, the *A.T. & T.* case is inapposite.

■ LOF also argues that the Ohio decree is the equivalent of an adjudication on the merits and is binding on both the EEOC and Eirhart. However, LOF fails to explain how Eirhart, who was neither a party to the Ohio case nor in privity with a party, can be bound by the Ohio decree.[3] *See*

---

**3.** LOF also fails to explain how, if Section 713(b) immunity is available to an employer who enters into a consent decree with the government, several courts of appeals have allowed individual employees to bring suits following such decrees. *Doninger v. Pacific*

*Northwest Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977); *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

*Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1307 (9th Cir. 1977); *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1204 (2d Cir. 1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973) (both cases indicating that Eirhart's ability to sue is not affected by the consent decree between LOF and the EEOC). Moreover, regardless of whether or not the consent decree is binding on the EEOC, that decree is limited, by its terms, to "[h]iring in all Toledo area plants." Additionally, any legal effect of the order on the EEOC would be unrelated to Section 713(b). Rather, such effect would be relevant only to a *res judicata* or collateral estoppel argument. No such argument was set forth in the district court's decision nor is such an argument before us on appeal.

LOF also contends that those interests which Section 713(b) seeks to safeguard were adequately protected under the circumstances surrounding the issuance of the Ohio consent decree. Those interests, according to LOF, are that the EEOC should not be bound by informal or unapproved opinions volunteered by members of the EEOC staff and that EEOC opinions should be based upon a solid factual foundation or on thorough consideration of the issues involved. However, in claiming that these interests have been adequately protected in this case, LOF overlooks the comprehensive nature of the Ohio decree and the compromises inherent in such an agreement. The Ohio decree dealt with a number of practices at LOF's Toledo plants. Indeed, neither the charges filed with the EEOC nor the complaint filed in the Ohio lawsuit made any mention of height and weight requirements. Rather, the focus of both the charges and the suit was LOF's seniority and transfer practices. LOF's hiring standards were dealt with in a two paragraph portion of the twenty-one page long consent decree. Therefore, we cannot agree with LOF's contention that the consent decree involved careful consideration by the government of the height and weight requirement.

We have carefully examined the other arguments raised by LOF and do not find them persuasive. Accordingly, the judgment of the district court is

REVERSED AND REMANDED.