Sherry **EIRHART**, Plaintiff,

v.

**LIBBEY–OWENS–FORD CO.**, Defendant.

No. 76 C 3182.

United States District Court,
N. D. Illinois, E. D.

Feb. 24, 1981.

Thomas R. Meites and Lynn Sara Frackman, Meites & Frackman, Chicago, Ill., for plaintiff.

Robert S. Soderstrom and James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff Sherry Eirhart ("Eirhart") charges defendant Libbey-Owens-Ford Co. ("LOF") with unlawful hiring practices, invoking this Court's jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(3). In her Sixth Amended Complaint (the "Complaint") Eirhart alleges that LOF's minimum 5′ 4″ height requirement unlawfully discriminates against women applicants. Eirhart now moves for the certification of the following class:

> All women who since March 31, 1971 have been denied employment because of defendant's requirement that for hire into an hourly position a person must be both 5′ 4″ in height and 110 lbs. in weight.[1]

For the reasons stated in this memorandum opinion and order, Eirhart's motion is granted.

Eirhart seeks class certification under Fed.R.Civ.P. ("Rule") 23(b)(2). While Eirhart has the burden of demonstrating complete satisfaction of Rule 23's requirements, litigation over employment standards by its nature involves class-wide discrimination and is therefore frequently suited to class action adjudication. *Romasanta v. United Air Lines, Inc.*, 537 F.2d·915, 918 (7th Cir. 1976), *aff'd*, 432 U.S. 385, 97 S.Ct. 2464, 52 L.Ed.2d 423 (1977).

---

1. Initially Eirhart moved on March 26, 1980 (promptly upon remand after the Court of Appeals decision reversing the summary judgment that had been granted LOF, 616 F.2d 278 (7th Cir. 1980)), for certification of a class of all women denied employment on height grounds alone. That motion tracked the Sixth Amended Complaint, which for the first time asserted class allegations and alleged only height-created discrimination. On December 4, 1980 Eirhart moved to amend her class certification motion to add the weight factor, though making no effort to amend the Complaint correspondingly.

*Requirements of Rule 23* [2]

Some of the criteria under Rule 23 need minimal discussion and no citation of authority. One or two, however, merit somewhat more extended consideration. This opinion will treat with each in turn.

### 1. *Numerosity*

■ According to an unchallenged statement in Eirhart's memorandum in support, an Equal Employment Opportunity Commission ("EEOC") investigation determined that as of 1979 approximately 460 women had been adversely affected by LOF's height and weight requirements at just one of LOF's facilities. Whether we look at such figures or at the somewhat lower numbers that would apply to the height criterion alone, there can be no question that the numerosity requirements of Rule 23 have been met.

### 2. *Commonality*

■ This action poses the questions whether LOF's height and weight (or perhaps height-only) requirements have a disparate impact upon women job applicants (a fact question) and if so whether that constitutes unlawful sex discrimination (a question of law). Those issues are identical for all class members, satisfying the commonality requirement of Rule 23.

---

**2.** Though uncomfortably aware of seeming like Cato on the floor of the Roman Senate, this Court repeats its comments in *Susman v. Lincoln American Corporation*, (No. 73 C 1089, Feb. 12, 1980) at 7 n.3:

> This Court shares Professor Arthur Miller's view of "numerosity" and "commonality" as terms that deserve equal linguistic billing with "normalcy." Because it appears that the battle is clearly lost and that no other terminology is as readily understood, this opinion has reluctantly surrendered purism for expediency.

It appears that this particular Carthage will never be destroyed.

**3.** Most of Eirhart's cited authority is inapposite, as an example may demonstrate. Suppose that all applicants for employment as security officers had to meet the dual requirement of being 5′ 4″ tall and having a brown belt in karate. It would plainly be appropriate for a 5′ 3″ woman with a black belt in karate, who had

### 3. *Typicality*

Eirhart alleges that she was refused employment with LOF solely due to her failure to meet the minimum height requirement. That claim is clearly typical of claims by all members of a height-related class. As to the larger class now asserted by Eirhart, however, she acknowledges that she weighed more than LOF's minimum 110-pound requirement. LOF argues that Eirhart therefore cannot represent a class (or subclass) of women who met LOF's height requirement but were denied employment because of LOF's minimum weight requirement.

■ It is clear that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed. 453 (1977). If this Court were writing on a clean slate it would agree with LOF's position.[3] However, even though the question was not really analyzed there, this case is indistinguishable from the situation in *Dothard v. Rawlinson*, 433 U.S. 321, 324, 97 S.Ct. 2720, 2724, 53 L.Ed.2d 786 (1977). There the Supreme Court permitted a female applicant, refused employment for failing to meet a 120-pound weight requirement, to serve as class representative chal-

---

been refused employment because of her height, to represent a class of all women similarly situated—that is, denied employment due to *height*. But the same woman would just as plainly not have a vital stake in challenging the employer's argument that the *karate* requirement is a legitimate BFOQ—the requisite interest summed up in the code-word "typicality." As this Court has previously noted, the "typicality" requirement is closely related to the jurisdictional concepts of standing (both in the Article III "case or controversy" sense and in the prudential sense). In those terms the test is not whether the putative class representative has suffered the same generalized type of discrimination (sex, race, age) as all other members of the proposed class but rather whether that discrimination has impacted the representative in the same way as a member of the same group. *Badillo v. Central Steel & Wire Co.*, 495 F.Supp. 299, 305–06 (N.D.Ill.1980).

lenging the minimum height *and* weight requirements.

Accordingly Eirhart's current definition of the larger class is approved. If however LOF hereafter demonstrates that the weight requirement has independent validity, it is free to re-raise the issue by seeking a narrowing of the class.

### 4. *Adequacy of Representation*

LOF does not challenge the adequacy of plaintiff's *counsel* to represent a class.[4] It rather asserts Eirhart's inadequacy in that respect.

■ LOF first argues that because Eirhart's initial complaint was filed pro se with an *in forma pauperis* petition, she is incapable of assuming the financial responsibility of representing a class in this action. There is substantial case law rejecting that particular brand of class distinction (or perhaps discrimination?), but the issue need not be dealt with in those terms in any event because (a) Eirhart's counsel has agreed to advance the costs of suit and (b) Eirhart has received a $20,000 loan from EEOC to cover litigation expenses.

■ LOF also argues that Eirhart cannot adequately represent the class because of her inability to "understand this lawsuit and to make decisions necessary to its management." LOF bases its argument on but one fact: In a 1977 deposition Eirhart responded that she did not know the basis of her allegations that LOF's height requirement applied to women but not to men. That has absolutely no relevance to the Rule 23(a)(4) standard—whether Eirhart "will fairly and adequately represent the interests of the class." To the contrary, Eirhart has demonstrated a great deal of perseverance and vigor in her pursuit of this action. Moreover, LOF's assertion is disingenuous in light of the fact that it fostered Eirhart's quite understandable confusion. Eirhart was initially accepted for employment, then told she would not be

hired because of LOF's height and weight rule. Thus she reasonably misunderstood the minimum height requirement as applying only to women. Through several attempted complaints LOF simply denied that it had any such policy. It was not until after the 1977 deposition and the fourth amended complaint that LOF came out from behind its professed ignorance of the rule, as mistakenly alleged, and conceded the existence of such a policy but that it was applicable to both men and women.

LOF's arguments as to adequacy of representation are simply without merit. Indeed, they come close to stretching the permissible bounds of zealous representation.

### *Scope of the Class*

### 1. *Propriety of a Nationwide Class*

■ Eirhart sought employment at an LOF plant in Ottawa, Illinois, just one of LOF's numerous facilities across the country. LOF argues that any class should necessarily be limited to a facility where Eirhart applied for employment. While in some cases a nationwide class may be inappropriate, Eirhart's claim is of a type admirably suited to certification of a nationwide class. LOF has conceded that the identical minimum physical requirements are in use throughout the United States in all of LOF's facilities. Thus the question of whether this rule has an adverse impact on females will not vary among the different facilities. *See, Karan v. Nabisco, Inc.*, 78 F.R.D. 388, 404 (W.D.Pa.1978); *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657 (E.D.Pa. 1980). Cases cited by LOF in which courts rejected certification of nationwide classes all involve situations in which the *acts* of discrimination would vary from facility to facility. *See, Evans v. Frito-Lay, Inc.*, 7 E.P.D. 7736 (N.D.Ohio 1974); *Richardson v. Coopers & Lybrand*, 83 F.Supp. 335, 18 E.P.D. 5062, 5064 (D.D.C.1978). It is in the best interests of judicial economy to

---

4. This Court has an independent responsibility to satisfy itself on that score, as on all other aspects of the Rule 23(c)(1) determination, because of its duty to protect the class. There is

no question but that Eirhart's counsel are highly qualified, with demonstrated experience and competence in class-action litigation.

have one adjudication of the legality of the minimum physical requirements imposed by LOF.

LOF also argues that a nationwide class is inappropriate because each facility draws on a separate labor pool. Given the nature of the standards involved, it is difficult to see how the geographical location of a labor pool would create a different impact on class members. If however the evidence should so demonstrate at a later stage of the case, Rule 23(c)(1) would permit this Court to redefine the class.

### 2. *LOF's Toledo Facility*

In 1970 the United States Justice Department (acting for EEOC) brought an action against the Toledo facility of LOF for gender-based discrimination. On February 3, 1971 the United States District Court for the Western District of Ohio entered a consent order that included the minimum height and weight requirements at issue here. LOF argues that because it is bound by the consent order the class certification should not include the Toledo area. Such an argument, however, ignores the simple fact that the consent decree does not bind Eirhart or the members of the class she represents. In the Seventh Circuit's opinion *in this case* the Court rejected that argument by LOF, stating "LOF fails to explain how Eirhart, who was neither a party to the Ohio case nor in privity with a party, can be bound by the Ohio decree." *Eirhart v. Libbey-Owens-Ford Company*, 616 F.2d 278, 282–83 (7th Cir. 1980). It may be that the existence of the consent decree could, at some future point, provide a defense for LOF to the discrimination charges at the Toledo facility. But that would involve an inquiry into the merits of this action, and such speculation is inappropriate in considering class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### *Timeliness*

Eirhart originally filed this action August 31, 1976, while the motion for class certification was first filed March 26, 1980, contemporaneously with the sixth amended complaint. LOF urges that such a long delay in filing the motion for class certification "indicates her inability to protect the interests of class members." In literal terms, however, Eirhart moved for certification of the class simultaneously with filing the first pleading that contained class allegations. In that sense, then, LOF cannot contend that Eirhart failed to move for class certification in a timely fashion, as Rule 23(c)(1) requires.[5]

If LOF means instead that plaintiff's tardy attempt to expand this case into a class action indicates her inability to represent a class, such an argument is unpersuasive.[6] It is not unusual for a plaintiff to find out in the course of pre-trial proceedings that the action she pursues is shared by many. Indeed, the principal delay in this action has been caused by LOF's failure to tell Eirhart openly that the rule she was complaining of applied to both men and women. Both the addition of class allegations to this action and the motion for class certification have therefore been made in a timely fashion.

### *Conclusion*

As required by Rule 26(c)(1), this Court determines that this action may be maintained as a class action under Rule 23(b)(2). Eirhart is the representative of the class defined in her December 4, 1980 motion.

---

**5.** To the extent that the timeliness argument is directed to the proposed expansion of the class in Eirhart's *amended* motion for class certification filed in December 1980, LOF has not supported its claim by any showing of prejudice.

**6.** LOF's counsel stated, "we have no objection to the filing of the sixth amended complaint" when Eirhart's counsel moved for leave to file on March 26, 1980. Any criticism based on the timing of Eirhart's class claims is really just such an objection and should properly have been interposed at that time.