Sherry **EIRHART** and Equal Employ-
ment Opportunity Commission,
Plaintiffs–Appellees,

v.

**LIBBEY–OWENS–FORD COMPANY**
and **LOF Glass Incorporated,**
Defendants–Appellants.

No. 91–3603.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1992.

Decided June 1, 1993.

Thomas R. Meites (argued), Lynn S. Frackman, Bonnie L. Beck–Fries, Paul W. Mollica, Meites, Frackman, Mulder & Burger, Chicago, IL, for Eirhart.

Margaret Herbert, John C. Hendrickson, E.E.O.C., Chicago, IL, William L. Robinson, Steven L. Brenneman, E.E.O.C., Office of General Counsel, Washington, DC, for E.E.O.C.

James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, Robert S. Soderstrom (argued), J.W. Storer, James R. Murray, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL,

for Libbey–Owens–Ford Co. and LOF Glass Inc.

Before CUMMINGS and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

This appeal concerns the enforcement of a 1988 consent decree between the parties which settled a Title VII lawsuit against defendants Libbey–Owens–Ford Company and LOF Glass Incorporated (collectively "LOF"). At issue was LOF's minimum height and weight requirements used in hiring employees. Plaintiffs Sherry Eirhart and the Equal Employment Opportunity Commission ("EEOC") alleged in a class action that LOF's policy discriminated against women. This appeal was consolidated with appeal number 91–3299. We write separately, however, on one of the two disputed issues.[1] We assume familiarity with the background of the case because of several other published opinions, see *Eirhart v. Libbey–Owens–Ford Co.*, 616 F.2d 278 (7th Cir.), cert. denied, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980); *Eirhart v. Libbey–Owens–Ford Co.*, 692 F.Supp 871 (N.D.Ill.1988); *Eirhart v. Libbey–Owens–Ford Co.*, 482 F.Supp. 357 (N.D.Ill.1979), and will discuss only the facts relevant to this appeal concerning the hiring and subsequent firing of class members at a LOF plant in Sherman, Texas. The EEOC did not participate in the appeals.

**I.**

Under the terms of the consent decree, LOF must hire the 342 class members who were denied employment because of LOF's height and weight requirements when openings arise at LOF plants. Each job seeking class member ("JSCM") was placed on a hire list or a transfer hire list for her chosen LOF plant. A JSCM is offered a job at a plant when she reaches the top of the list, and an opening occurs. Once a JSCM is offered a

---

1. Appeal number 91–3299 concerned the award of attorneys' fees to plaintiff class counsel for implementation of the consent decree and other post-decree matters. We decided the attorneys' fees issue in *Eirhart v. Libbey–Owens–Ford Co.*, 996 F.2d 846 (7th Cir.1993).

position, her name is removed from the list. LOF must make offers: "With respect to each and every permanent (more than 120 days) job openings ("Opening") which arises at any LOF glass plant which has. any JSCMs on its Hire List or Transfer Hire List." Consent Decree Art. VII, section 5(E).

The first seventy-five permanent openings at LOF's plant in Sherman, Texas were to be offered to qualified JSCMs. In 1990, as a result of an analysis of several factors, including labor and production needs at the Sherman plant, the plant manager determined there was a need for fifty-four additional full-time employees at the plant. In June and July 1990, a LOF director of manufacturing reviewed reports from various supervisors at the plant and authorized the hiring of fifty new full-time employees. Beginning in August 1990, LOF hired forty-two JSCMs for what LOF says were permanent positions. LOF, however, quickly laid off all newly hired JSCMs in October 1990 because of an unforeseen large cancellation of orders by General Motors Corporation, an important customer, as well as "a sudden, unanticipated recession," according to LOF. Some JSCMs had only been working for a few days or weeks. When business turned bad for LOF, the JSCMs were the first to go because of their low seniority status at the plant. Other temporary and probationary employees were also laid off though no regular LOF employees were.

LOF supplements its approximately four hundred person work force at the plant with temporary employees who are hired "for peaks and valleys or fill in." The record shows in a four-year period, temporary employees were regularly used at the Sherman plant. As many as eighty-nine temporaries were hired one month while up to forty-six have been laid off in a month. Plaintiff relies upon a pattern in the number of temporaries showing a regular increase in temporaries in the spring and summer months with a slowdown by October. The record indicates that temporary employees were to be replaced by permanent positions in 1990 which LOF knew would be filled by JSCMs. LOF claims this is because business was improving in such a way that the positions became permanent; Eirhart claims the temporary positions were simply replaced by permanent ones.

In 1990, a union campaign was also being mentioned at the non-union Sherman plant. In response to employees' interest in possibly unionizing, LOF hired a consultant to conduct a survey of employees at the plant. The record shows one of the concerns raised was the use of temporary employees because of its impact on quality and safety at the plant.

Eirhart filed a Motion for Recall and Other Relief on November 19, 1990, days after learning the JSCMs had been laid off. Eirhart claimed LOF violated the consent decree by hiring JSCMs for temporary positions. Eirhart argued the positions were not permanent because under the consent decree, permanent positions must be at least 120 days and none of the JSCMs had worked that long. Eirhart argued the JSCMs who were hired and then quickly fired are actually worse off because of LOF's action under the consent decree than before. At the district court's direction, LOF responded to the issue of a 120–day minimum requirement on December 12. The parties submitted a joint discovery schedule on December 21 to the court after being directed to do so at a discovery conference concerning the Motion for Recall and Other Relief. The parties agreed on the scheduling of interrogatories, document requests, and depositions to be completed by January 15, 1991.

At a hearing on February 15, 1991, the district judge orally ruled that the consent decree unambiguously did not guarantee employment for 120 days. Instead, the judge found the decree required LOF to use its best predictive judgment when making any offers. The judge said the decree plainly intended that "a temporary offer should not be a trigger for bringing a JSCM into the loop." Rec. 1207–2 at 2. The judge then advised LOF to respond to the second part of plaintiffs' argument that the JSCMs were hired for positions that were temporary in nature and had simply been renamed permanent. "The idea of attaching a permanent label to people in order to get rid of the concept of temporaries is something I think

LOF has got some explaining to do." *Id.* at 5.

Finally, on May 31, 1991, the court ruled on the Motion for Recall and Other Relief and found LOF had violated the terms of the consent decree. The court ordered the JSCMs to be placed back on the Sherman hire list as if they had never been removed from it. Damages were awarded to the JSCMs for lost wages, benefits, and consequential damages. On appeal, LOF argues it did not violate the consent decree because the positions were permanent, not temporary. If unsuccessful on this issue, LOF then appeals the district court's method of calculating damages for lost benefits.

## II.

There is a dispute whether the Motion for Recall and Other Relief was really a motion for summary judgment, or if the district judge made his findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52.[2] LOF argues on appeal the motion was for summary judgment, and we should examine the entire record and draw all inferences in its favor as the non-moving party. Eirhart argues the motion was tried by the court under Rule 52, and we should review it under the Rule's clearly erroneous standard.

We agree with Eirhart that the motion was heard by the court which made findings pursuant to Rule 52. Eirhart filed her motion to which LOF responded. Then, after extensive discovery which included interrogatories, at least five depositions, and numerous LOF business records, both parties filed more briefs. There are many obvious differences

between a summary judgment motion and a matter tried by the court under Rule 52, but LOF focuses only on the different standards of review. LOF has never once argued that a material issue of fact exists which precludes finding in favor of Eirhart. The motion was not called a summary judgment motion, it was never referred to as a summary judgment motion before Judge Shadur, and neither party followed local rules concerning motions for summary judgment.[3]

Rule 52 allows for matters to be tried to the district court on a written record; we do not read the Rule to require that an evidentiary hearing be held. *See SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 558 (5th Cir.1992); *Connors v. Ryan's Coal Co.*, 923 F.2d 1461, 1466 (11th Cir.1991); *Edwards v. United States Postal Service*, 909 F.2d 320, 322 (8th Cir.1990); *Volkswagen of America, Inc. v. Jahre*, 472 F.2d 557, 558–59 (5th Cir.1973). The Motion for Recall and Other Relief was fully developed by the parties' briefs, numerous exhibits consisting of affidavits, excerpts from depositions, and LOF records. No party at any time requested a hearing be held or witnesses be allowed to testify. *Cf. United States v. City of Northlake*, 942 F.2d 1164, 1165 (7th Cir.1991). Nor did LOF ever object to the procedure in district court or make any motion to reconsider after the court's decision. LOF's last minute request at oral argument in this court for an evidentiary hearing comes too late and was only made after direct questioning from this court. LOF first mentioned summary judgment only in its appellate brief and could not

---

**2.** Federal Rule of Civil Procedure 52(a) provides in part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.... It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of evidence or appear in an opinion or memorandum of decision filed by

the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56....

**3.** We also do not believe this is a case where cross-summary judgment motions became a bench trial either because the parties consented to this, impliedly or otherwise, or because it involved a legal conclusion to be drawn from undisputed facts. *See Market St. Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991); *Brock v. TIC Int'l Corp.*, 785 F.2d 168, 169 (7th Cir.1986); *Lac Courte Oreilles Band v. Voigt*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983).

explain why it was a summary judgment motion. LOF did not request a hearing in its brief or argue that any issue of material fact existed. For all intents and purposes, this motion was decided by the district court under Rule 52 based upon the written record submitted by the parties with their briefs.[4]

■ We cannot reverse the district court's findings of facts unless they are clearly erroneous. Fed.R.Civ.P. 52; *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). This standard does not change when the findings are based solely on a written record. *Id.* at 574, 105 S.Ct. at 1511; *Mucha v. King*, 792 F.2d 602, 605 (7th Cir.1986). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). It is, therefore, not our role to chose between two permissible views of the evidence, *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511, and a district court's choice cannot be clearly erroneous when there are two permissible conclusions. *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989).

The district court found LOF had hired forty-two JSCMs into temporary, not permanent, positions in its order dated May 17, 1991. The court based its conclusion on the "extensive discovery" and submissions from both sides. The court found that the jobs were the same as the jobs traditionally filled by temporary workers at the plant.[5] The court rejected LOF's contention that because of production and labor demands, the temporary jobs had become permanent positions by mid–1990. The court was persuaded by the cyclical use of temporary employees at the plant which almost always resulted in a complete drop in numbers by October. In 1990, the court found LOF's sales and production requirements for the Sherman plant did not create a need for permanent positions any more than in earlier years. The court recognized the impact of General Motors's unforeseen cancellation of orders and the major recession in the automobile industry, but the court found these factors only accelerated the layoff situation rather than causing it.

The court adopted nineteen pages of findings and conclusions offered by plaintiffs for its own. Plaintiffs demonstrated below in their motion, as Eirhart does here, that the evidence shows the JSCMs were hired to replace temporary employees. The temporary employees hired by LOF in 1990 were hired for short-term problems in the production of new products. In June and July 1990 when the decision to hire permanent employees was being made, the nature of these problems had not changed. Also, LOF's manpower reviews and production plans according to General Motors estimates did not show how these positions were any more permanent than they had been temporary in other years. Nor were there mechanical changes at the plant that could explain why permanent employees were needed instead of temporary ones. Further, when the decision was made, the General Motors weekly product orders showed no increase in demand. The court somewhat modified plaintiffs' findings concerning LOF's alleged response to the threat of a union campaign by hiring permanent employees and found it was not a motivating factor in the decision, but rather the decision was made in the context of the union problem and a possible solution.

■ The district court's findings were sufficient for Rule 52. A court may adopt

4. This Title VII action has been thoroughly argued during its more than ten years time before Judge Shadur. Eirhart's counsel stated a hearing or trial has never been held in the long history of the case, and we found no evidence of one in the record. In the issue before us, the focus is not on LOF's intent when it offered the JSCMs jobs at the plant. Judge Shadur did not find that LOF offered the JSCMs these jobs in bad faith in order to remove JSCMs from the hire or transfer hire lists. Rather the judge found the jobs were not permanent jobs within the requirements of the consent decree. There is no need for a hearing to be held to resolve LOF's intent in order to enforce the consent decree in this instance.

5. The court indicated LOF changed the label of its temporary positions to permanent apparently in ignorance of a traditional attribution to Abraham Lincoln (even if apocryphally so): "If you call a tail a leg, how many legs has a dog? Five? No, calling a tail a leg don't make it a leg."

verbatim a party's findings as its own, even though it is preferred that a court independently make its own findings. *See Anderson,* 470 U.S. at 572, 105 S.Ct. at 1510; *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 313–14 (7th Cir.1986). We recognize that district courts are presently under great litigation pressure. The district judge here carefully reviewed the evidence submitted by the parties and explained his conclusions in an eight page memorandum opinion and order. He has been involved with the case for most of its history and did not lightly consider plaintiffs' request to enforce the decree. As we stated in *City of Northlake,* 942 F.2d at 1168–69: "Much of a consent decree's value lies not in the steps to be taken immediately by the defendant to remedy discrimination, but in the promise that the plaintiff in a case like this one can look to the courts to hold the defendant in contempt for ongoing and future violations." We affirm the findings made by the court and those specifically adopted by the court.

■ After concluding the JSCMs who had been laid off were entitled to damages, the parties filed several more briefs on the calculation and amount of damages. We review the district court's damages award also under the clearly erroneous standard. *Stanley Gudyka Sales Co. v. Lacy Forest Products Co.,* 915 F.2d 273, 277 (7th Cir.1990); *Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1424–25 (7th Cir.1986). The district court awarded damages measured from the JSCMs' layoff date for lost wages and benefits from their other employment. LOF appeals the calculation of benefits offered by plaintiffs and accepted by the court. Plaintiffs retained an independent, experienced actuary who calculated the benefits for each non-LOF employer according to a uniform average from an employee benefits survey published by the United States Chamber of Commerce. LOF offered the calculations by its own in-house benefits director who sought to make a case by case analysis for each JSCM. The court, however, agreed with plaintiffs' actuary who believed LOF's expert did not have the informational input from the other employers necessary for accurate individual calculations. Based on our careful review of the record, we affirm the court's choice in favoring plaintiffs' calculations.

### III.

The district court's findings and conclusions were not clearly erroneous. We affirm.

AFFIRMED.

MANION, Circuit Judge, dissenting.

The district court determined that LOF acted "in bad faith" when laying off a group of employees; essentially that LOF perpetrated a fraud on the employees. The district court made this factual finding about LOF's intent without holding an evidentiary hearing. It simply chose between competing factual inferences based on the evidence of record. The parties neither stipulated to this procedure nor implicitly consented to it. The parties had no notice that the court was about to resolve a question of fact. This court upholds the district court's factual finding and affirms its judgment, holding that the proceedings below amounted to a trial based on a written record under Rule 52, Fed.R.Civ.P. Because I believe that a district court must comply with several procedural formalities when acting as a trier of fact, I respectfully dissent from the decision of this court.

A brief review of the facts is appropriate. LOF and Eirhart settled a 10–year old Title VII class action by a consent decree which became effective on October 1, 1988. As part of the remediation afforded to the class under the consent decree, LOF was required to hire 342 class members into "permanent" positions within the company. LOF was to maintain the names of 342 class members on a hire list. As permanent positions within the company became available, LOF was to fill the positions with women from the hire list. LOF's duty of good faith under the consent decree required that it only offer class members those positions which it truly believed would be permanent.

Around July 1990, LOF decided to hire several permanent employees at its Sherman, Texas plant to replace a group of temporary employees who filled in at the plant as the workload demanded. LOF claims that de-

mand for its products had increased and long-term employees were needed to satisfy this demand. In accordance with the terms of the consent decree, LOF first offered the newly created Sherman positions to members of the class. Between August 13 and October 15, LOF hired 42 class members at the Sherman plant.

On October 22, 1990 General Motors Corporation (GM) announced an unforeseen shutdown of some of its plants due to a major recession in the automobile market. Attendant to this shutdown, GM canceled large portions of its orders for LOF products. Within ten days of GM's order cancellations, LOF laid off the 42 recently hired class members at the Sherman plant. LOF claimed that its initial hiring of the class members satisfied its obligations to them under the consent decree. Indeed, the consent decree made no guarantees about the permanence of jobs; it simply required LOF to use its best predictive judgment when designating a job as permanent. Accordingly, LOF refused to place the 42 laid-off class members back onto the hire list.

On November 14, 1990, the class members filed a Motion for Recall and Other Relief in the district court, seeking an "order compelling [LOF] to rehire each [job-seeking class member] to whom it offered, but did not provide, a permanent job opening and to compensate each [job-seeking class member] for the days not worked pursuant to [LOF's] claimed lay-off." LOF opposed the motion, claiming that it intended to and did hire the class members into permanent positions, but that an unforeseen downturn in the automobile industry caused the sudden layoffs. The class took the position that the hirings were a ruse—a bad-faith attempt to escape the requirements of the consent decree. They pointed to the fact that each of the Sherman positions previously had been designated by LOF as "temporary", and the temporary positions were usually eliminated at the plant at about the same time of the year that LOF laid off the class members.

The district court held a hearing on this motion and other matters on February 15, 1991. The court characterized that hearing as an "interim status." No witnesses were

sworn; no testimony was taken. If anything, the attorneys merely made oral argument about whether the Sherman jobs were permanent within the meaning of the decree. The district court ordered the parties to submit affidavits and other documents to support their respective positions. The parties never objected to this request and submitted the requested documents.

On May 17, 1991, the district court issued a Memorandum Opinion and Order, finding that LOF hired the Sherman employees "in bad faith", agreeing with the plaintiff class that LOF intended all along to lay off the Sherman employees. Based on its factual finding, the district court ruled that LOF's "hiring of the (class members) was not that of 'permanent' openings within the meaning of the Decree." The court ordered LOF to return to the decree's hire list the 42 class members who had been laid off. Later, based upon subsequent briefing on the issue of money damages, the court ordered LOF to pay the laid-off class members a total of $199,089.10 in lost wages, benefits, and consequential damages.

On appeal, LOF challenges the finding that it acted in bad faith in laying off the class members. LOF argues the facts support only one inference: that a sudden downturn in the automobile industry caused the layoffs. LOF asks this court to accept this inference as a matter of law. So confident is LOF in its position that it never concedes in its briefs that there is a possible question of fact. However, LOF argues in its briefs that the plaintiff class failed to demonstrate the absence of an issue of material fact. LOF claims, therefore, that the district court improperly granted summary judgment for the plaintiff class because it ignored the inference that the layoffs were due to the automobile industry downturn. Ultimately, LOF seeks a "remand" of this case to the district court. At oral argument, in response to questions by the court, LOF clarified that it primarily sought judgment in its favor as a matter of law, and absent that, a remand to the district court to conduct an evidentiary hearing.

Initially, it is important to properly characterize the proceedings which took place be-

fore the district court. Did the district court merely interpret the meaning of the word "permanent" as it is used in the consent decree, or did the district court make a factual finding regarding LOF's intent? This court posits in a footnote that

> In the issue before us, the focus is not on LOF's intent when it offered the JSCMs jobs at the plant. Judge Shadur did not find that LOF offered the JSCMs these jobs in bad faith in order to remove JSCMs from the hire or transfer hire lists. Rather, the judge found the jobs were not permanent jobs within the meaning of the consent decree. There is no need for a hearing to be held to resolve LOF's intent in order to enforce the consent decree in this instance.

(Opn. page 841). On the contrary, the district court based its decision upon an explicit finding that LOF acted in "bad faith" in offering the Sherman jobs to the class members.[1] If the district court simply interpreted a term in the consent decree, there would have been no need for any factual findings, and no authorization for clearly erroneous review. Interpretation of the terms of a consent decree is a legal determination which we would review under a *de novo* standard. *South v. Rowe*, 759 F.2d 610, 613 (7th Cir. 1984). In this case, the district court interpreted the consent decree to mean that LOF was required to hire the job-seeking class members as full-time or permanent employees. LOF does not dispute this interpretation. It concedes its obligation to hire the class members into permanent or full-time positions and claims that the Sherman positions met those requirements.[2] This is not a case, therefore, where we have been asked to review the district court's interpretation of a consent decree.

The disputed issue in this case is LOF's intent. The district court found, based solely upon the documentary evidence submitted by the parties, that LOF acted in "bad faith" in hiring the Sherman class members—that LOF never intended the jobs to be permanent. In essence, the court found that LOF hired the class members as a ruse to avoid the requirements of the consent decree. The district court determined that LOF's change in characterization of the jobs from temporary to permanent conclusively established that LOF intended all along to lay off the class members hired at the Sherman plant.

Because the true issue in this case concerns LOF's intent when it hired the class members, there is a need to hold an evidentiary hearing to resolve the fact sensitive issue of intent. The court confronts the need for an evidentiary hearing by taking alternative positions: asserting that "[f]or all intents and purposes" the proceedings before the district court amounted to an evidentiary hearing (opn. page 841), and also that LOF nevertheless waived its right to an evidentiary hearing.

In support of its position that the proceedings below were an evidentiary hearing, the court points out that the district court considered not only the written record, but also held several hearings over a number of years at which it considered matters related to the consent decree. However, the ten years of court activity leading up to the consent decree had no connection to the 42 jobs at the Sherman plant. The only hearing at which the district court considered the Sherman layoffs was the one held on February 15, 1991. In any event, the Motion for Recall and Other Relief was not a matter "tried to the court" under Rule 52. A trial to the court includes several procedural formalities, none of which were present in the district court's informal consideration of the issue. Rule 39 describes the practice of trying a

---

**1.** Contrary to the assertions made in the court's opinion, on several occasions in its Memorandum Opinion and Order regarding the Sherman employees, the district court specifically "found" that "LOF acted in bad faith in hiring the JSCMs". Because it found that LOF never intended the jobs to be permanent—that it acted in bad faith—the district court concluded that the jobs were not permanent within the meaning of the decree.

**2.** The district court concluded that the word "permanent" as used in the consent decree should be interpreted according to its ordinary meaning, and is not in any way limited or expanded by the parenthetical "(more than 120 days)" which immediately follows the word in the consent decree. Neither party appeals this ruling.

factual issue to the court, and Rule 43 describes the method of taking testimony in such proceedings. Attendant to this practice are several procedural safeguards: the Federal Rules of Evidence usually apply, and Rule 52 requires specific findings of fact which are reviewed under a "clearly erroneous" standard.

The proceedings before the district court embraced none of these procedural formalities. No witnesses were sworn. No testimony was taken. No documents were authenticated in the courtroom. They were only submitted attached to memoranda or as additional filings. Nor were any of the documents subject to contemporaneous objection under the Federal Rules of Evidence. At the hearing held on February 15, 1991, lawyers only made legal arguments. In short, the proceedings below did not amount to a trial to the court from which the judge could make factual findings.

The court seems to take the position that because Rule 52 contemplates that some decisions may be based on documentary evidence, the district court was justified in relying upon documents of record to choose between competing factual inferences. It is true that judges often may make decisions in bench trials based mostly or even solely on documentary evidence. Sometimes documentary evidence is the most persuasive evidence available to the factfinder. But just because Rule 52 specifically applies the "clearly erroneous" standard to decisions based on documentary evidence does not authorize a district court to forego the formalities of trial to the court when it deems the record sufficient to choose between competing factual inferences. The "clearly erroneous" standard authorized by Rule 52 applies to documents only when a matter is tried to the court, and the Motion for Recall and Other Relief was never tried to the court.[3]

Along with its conclusion that "for all intents and purposes" the proceedings below

amounted to an evidentiary hearing, the court makes several arguments that LOF nevertheless waived its right to such a hearing. The court posits that LOF waived its right to an evidentiary hearing because it never explicitly requested one at the district court. But LOF had no notice that the district judge was preparing to bypass the Rules of Civil Procedure to make a factual finding based on the cold record. Certainly, a party is not required to specifically request an evidentiary hearing in order to preempt a district court from making an unauthorized factual determination.

The court also insinuates that LOF waived its right to an evidentiary hearing by submitting documents at the district court and by failing to label its Motion for Recall and Other Relief a "motion for summary judgment". But one does not consent to the district court making a finding of fact just because one submits documents. If this were so, every motion for summary judgment accompanied by an affidavit would be an invitation to the district court to choose between competing factual inferences. Nor does LOF's failure to apply the "summary judgment" label to its motion authorize the district court to choose between competing factual inferences without holding an evidentiary hearing. No matter how the motion was labelled, the district court was not authorized to make factual findings without complying with the applicable rules.

In the past, the only times we have given deference to a district court's findings of fact made without the benefit of an evidentiary hearing have been when the parties stipulate to this procedure, *Lac Courte Oreilles v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983), or explicitly consent to it, *May v. Evansville Vanderburgh School Corp.,* 787 F.2d 1105 (7th Cir.1986). In *May,* the district court granted summary judgment and the losing party appealed. We concluded that *May*

---

3. Rule 52's specific reference to documentary evidence simply makes clear that when reviewing a district court's decision based on such evidence, an appellate court should avoid the temptation to apply its own impressions to interpreting the documents (even though the appellate court is in as good a position to review the documentary evidence as the district court). That was the essential holding of *Anderson v.*

*Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), where the Supreme Court reversed an appellate court's decision to overturn a district court's findings made after a 2–day trial. The Supreme Court reasoned that even though the district court's findings did not rest on credibility determinations but on documentary evidence, Rule 52 required "clearly erroneous" review.

was a unique sort of case where "both parties move for summary judgment because they do not want to bear the expense of trial but instead want the trial judge to treat the record of the summary judgment proceeding as if it were the trial record." *Id.* at 1115. The appellant in that case did not seek to overturn the decision of the trial court because of the existence of a material issue of fact. Rather, she considered the documentary evidence so supportive of her position that she sought summary judgment in her favor. We noted "[t]his is not an alternative contention, with a trial as a backup request; it is the only thing she asks us to do (except for a remand to assess damages and formulate the injunctive decree)." *Id.* at 1116. At oral argument "[h]er lawyer was emphatic in stating that his client did not want a trial." *Id.*

Unlike the appellant in *May*, from the outset of this appeal LOF has sought to overturn the decision of the trial court because it improperly resolved a question of fact. In its brief, LOF states that "the plaintiffs, nevertheless, failed to prove [the] absence of a genuine issue of material fact." The court ignores LOF's clear expression in its brief regarding the existence of a material issue of fact. The court incorrectly posits that "LOF has never once argued that a material issue of fact exists which precludes finding in favor of Eirhart." (Opn. page 840). As noted above, however, LOF explicitly made this argument. LOF goes on to argue that because "a reasonable jury could have rendered a verdict for the nonmoving party"—for LOF—"the court must reverse the decision." LOF concluded its brief by asking this court to remand this matter. At oral argument, LOF clarified that although it considered itself entitled to judgment in its favor as a matter of law, as an alternative it desired a remand to the district court to choose between competing factual inferences. Certainly, LOF has not expressed a desire to waive its right to present its evidence to a factfinder. *See Market Street Associates Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir.1991); *Cf.* Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2720 at 16–17 (1983) ("[T]he fact that both parties simultaneously are arguing that there is no genuine issue of material fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit.").

Under the federal rules, there is no procedural basis for the district court's determination that LOF violated the consent decree. The finding was improper under Rule 52 because the proceeding was not an "action tried upon the facts without a jury." There was no trial; no evidentiary hearing. Further, the resolution of a fact question is not permissible when a district court renders judgment under Rule 56. Because the district court's finding that LOF had a bad intent was not made pursuant to a trial to the court, we cannot review the finding under a clearly erroneous standard. The only way to view it is as an improper resolution of a question of fact. The unusual circumstance of the hiring and almost immediate layoffs, combined with the evidence that the job classifications were suddenly changed from temporary to permanent, support the inference that LOF's actions were a ruse. But the competing inference that LOF hired the class members in good faith only to encounter a sudden downturn in the automobile industry, coupled with substantial cancellation of orders, is also significant. These competing inferences should not be resolved without an evidentiary hearing. The district court's judgment should be reversed and remanded.